**ORIGINAL**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| HEXION HOLDINGS LLC, *et al.*,[1] | Case No. 19-10684 (KG) |
| Debtors. | Jointly Administered |

**INTERIM ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363(c), 363(d), 364(c), 364(d), 364(e) AND 507 AND BANKRUPTCY RULES 2002, 4001 AND 9014 (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS AND (IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND 4001(c)**

Upon the motion, dated April 1, 2019 (the "Motion"), of Hexion Holdings LLC ("Holdings") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Cases") commenced on April 1, 2019 (the "Petition Date") for interim and final orders under sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware (this "Court") seeking:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Hexion Holdings LLC (6842); Hexion LLC (8090); Hexion Inc. (1250); Lawter International Inc. (0818); Hexion CI Holding Company (China) LLC (7441); Hexion Nimbus Inc. (4409); Hexion Nimbus Asset Holdings LLC (4409); Hexion Deer Park LLC (8302); Hexion VAD LLC (6340); Hexion 2 U.S. Finance Corp. (2643); Hexion HSM Holdings LLC (7131); Hexion Investments Inc. (0359); Hexion International Inc. (3048); North American Sugar Industries Incorporated (9735); Cuban-American Mercantile Corporation (9734); The West India Company (2288); NL Coop Holdings LLC (0696); and Hexion Nova Scotia Finance, ULC (N/A). The address of the Debtors' corporate headquarters is 180 East Broad Street, Columbus, Ohio 43215.

(I)    authorization for the applicable Debtors to obtain debtor-in-possession financing in the aggregate principal amount of $700,000,000 (of which $600,000,000 would be made available upon entry of the Interim Order, subject to any applicable limitations in the DIP ABL Agreement (as defined below)) consisting of (i) an asset-based revolving facility in the aggregate principal amount of $350,000,000 (of which $250,000,000 would be made available upon entry of the Interim Order, subject to any applicable limitations in the DIP ABL Agreement) (the "DIP ABL Facility," all extensions of credit (including the issuance of letters of credit) under the DIP ABL Facility, the "DIP ABL Loans") and (ii) a term loan facility in the aggregate principal amount of $350,000,000 (the "DIP Term Loan Facility"; all extensions of credit under the DIP Term Loan Facility, the "DIP Term Loans" and, together with the DIP ABL Loans, the "DIP Loans") on the terms and conditions set forth in:

- this interim order (this "Interim Order");

- the Amended and Restated Senior Secured Debtor-in-Possession Asset-Based Revolving Credit Agreement (substantially in the form annexed as Exhibit A to the Commitment/Fee Letter annexed to the Motion as Exhibit B, and as hereafter amended, supplemented or otherwise modified, the "DIP ABL Agreement," and, together with the Commitment/Fee Letters (as defined in paragraph 6(c)(iii) below) and all other agreements, documents and instruments executed and delivered in connection with the DIP ABL Agreement, as hereafter amended, supplemented or otherwise modified, the "DIP ABL Documents"), among Hexion Inc. as a borrower (in such capacity, the "U.S. ABL Borrower"), Hexion Canada Inc. (a non-Debtor entity) as a borrower (the "Canadian Borrower"), Hexion B.V. (a non-Debtor entity) as a borrower (the "Dutch Borrower"), Hexion UK Limited and Borden Chemical UK Limited (each, a non-Debtor entity) as borrowers (the "U.K. Borrowers") and Hexion GmbH (a non-Debtor entity) as a borrower (the "German Borrower" and, together with the Canadian Borrower, the Dutch Borrower and the U.K. Borrowers, the "Non-Debtor Borrowers," and, together with the U.S. ABL Borrower, the "DIP ABL Borrowers"), Hexion LLC ("Intermediate Holdings"), each domestic and foreign subsidiary of Intermediate Holdings that is party thereto in its capacity as a guarantor (collectively, the "DIP ABL Facility Guarantors"), the lenders party thereto from time to time (collectively,

together with the other Secured Parties (as defined in the DIP ABL Agreement), the "DIP ABL Lenders"), JPMorgan Chase Bank, N.A. ("JPMorgan"), as administrative agent and collateral agent for the DIP ABL Lenders (in such capacities, the "DIP ABL Agent"), and each of JPMorgan Chase Bank, N.A., Credit Suisse Loan Funding LLC and Citigroup Global Markets Inc. in their respective capacities as arrangers thereunder (collectively, the "DIP Arrangers");

- the Senior Secured Term Loan Agreement (substantially in the form annexed as Exhibit A to the Commitment/Fee Letter annexed to the Motion as Exhibit C and as hereafter amended, supplemented or otherwise modified, the "DIP Term Loan Agreement" and, together with the DIP ABL Agreement, the "DIP Credit Agreements"; the DIP Term Loan Agreement, together with the Commitment/Fee Letters, the DIP Intercompany Loan (as defined below), and all other agreements, documents and instruments executed and delivered in connection with the DIP Term Loan Agreement, as hereafter amended, supplemented or otherwise modified, the "DIP Term Loan Documents" and, together with the DIP ABL Documents, the "DIP Documents"), among Hexion International Holdings B.V. (a non-Debtor entity) as borrower (in such capacity the "DIP Term Loan Borrower"), Intermediate Holdings, Hexion Inc. and each of the other Debtors in their respective capacities as guarantors (collectively, the "DIP Term Loan Facility Guarantors"), the lenders party thereto from time to time (collectively, together with the other Secured Parties (as defined in the DIP Term Loan Agreement), the "DIP Term Loan Lenders", together with the DIP ABL Lenders, the "DIP Lenders"), JPMorgan, as administrative agent and collateral agent for the DIP Term Loan Lenders (in such capacities, the "DIP Term Loan Agent" and, together with the DIP ABL Agent, the "DIP Agents"), and the DIP Arrangers in their respective capacities as arrangers thereunder; and

- The intercompany loan (the "DIP Intercompany Loan") to be made by Hexion International Holdings B.V. (in its capacity as lender under the DIP Intercompany Loan, the "DIP Intercompany Lender") to Hexion Inc. (in such capacity, the "DIP Intercompany Borrower"), whose obligations under the DIP Intercompany Loan shall be subordinated to its obligations as a DIP Term Loan Facility Guarantor and a DIP ABL Borrower, but not to any of its other indebtedness or obligations of any kind or nature.

(II) authorization for (a) the DIP ABL Facility Guarantors that are Debtors (including the U.S. ABL Borrower in its capacity as a guarantor of the obligations of the Non-Debtor Borrowers) to guarantee on a secured basis the DIP ABL Borrowers' obligations in respect of the DIP ABL Loans on a joint and several basis, including to guarantee any DIP ABL Loans advanced to the Non-Debtor Borrowers and (b) the DIP

3

Term Loan Facility Guarantors that are Debtors to guarantee on a secured basis the DIP Term Loan Borrower's obligations in respect of the DIP Term Loans on a joint and several basis;

(III)    authorization for the Debtors to execute and deliver the DIP Credit Agreements and the other DIP Documents to which they are a party and to perform their respective obligations thereunder and such other and further acts as may be necessary or appropriate in connection therewith;

(IV)    authorization for the Debtors to (a) use proceeds of the initial borrowing under the DIP ABL Facility and the DIP Term Loan Facility as required pursuant to the DIP Credit Agreements to repay in full the Prepetition ABL Obligations (as defined in paragraph 4(a) below) arising under the Amended and Restated Asset-Based Revolving Credit Agreement, dated as of December 21, 2016 (as amended, supplemented or otherwise modified prior to the Petition Date, the "Prepetition ABL Agreement", and together with all security, pledge and guaranty agreements and all other documentation executed in connection with any of the foregoing, each as amended, supplemented or otherwise modified prior to the Petition Date, the "Prepetition ABL Documents"), among each of the DIP ABL Borrowers in their respective capacities as borrowers thereunder (collectively, the "Prepetition ABL Borrowers"), Intermediate Holdings, the lenders party thereto from time to time (together with the other Secured Parties (as defined in the Prepetition ABL Credit Agreement), the "Prepetition ABL Lenders") and JPMorgan as administrative agent and collateral agent for the Prepetition ABL Lenders (in such capacities, the "Prepetition ABL Agent" and together with the Prepetition ABL Lenders, the "Prepetition ABL Secured Parties") and (b) obtain letters of credit under the DIP

4

ABL Facility and to deem all outstanding letters of credit issued under the Prepetition

ABL Agreement (the "Prepetition Letters of Credit") to be letters of credit issued under

the DIP ABL Facility;

(V)  authorization for the Debtors to (a) use the Cash Collateral (as defined in

paragraph 14 below) pursuant to section 363 of the Bankruptcy Code, and all other

Prepetition Collateral (as defined in paragraph 4(b) below), and (b) provide adequate

protection to the following parties with respect to the applicable prepetition secured debt

obligations:

(i)    the noteholders (collectively, the "2012 First Lien Noteholders") under the Indenture, dated as of March 14, 2012 (as amended, supplemented or otherwise modified, the "2012 First Lien Indenture", and together with all security, pledge and guaranty agreements and all other documentation executed in connection with any of the foregoing, each as amended, supplemented or otherwise modified, the "2012 First Lien Documents"), among Hexion U.S. Finance Corp. as issuer, the guarantors party thereto and Wilmington Trust, National Association, as trustee for the 2012 First Lien Noteholders (together with the collateral agent for the 2012 First Lien Noteholders, the "2012 First Lien Indenture Trustee");

(ii)   the noteholders (collectively, the "2015 First Lien Noteholders") under the Indenture, dated as of April 15, 2015 (as amended, supplemented or otherwise modified, the "2015 First Lien Indenture", and together with all security, pledge and guaranty agreements and all other documentation executed in connection with any of the foregoing, each as amended, supplemented or otherwise modified, the "2015 First Lien Documents"), among Hexion Inc. as issuer, the guarantors party thereto and Wilmington Trust, National Association, as trustee for the 2015 First Lien Noteholders (together with the collateral agent for the 2015 First Lien Noteholders, the "2015 First Lien Indenture Trustee");

(iii)  the noteholders (collectively, the "2017 First Lien Noteholders" and, together with the 2012 First Lien Noteholders and the 2015 First Lien Noteholders, the "First Lien Noteholders") under the Indenture, dated as of February 8, 2017 (as amended, supplemented or otherwise modified, the "2017 First Lien Indenture", and together with all security, pledge and guaranty agreements and all other documentation executed in connection with any of the foregoing, each as amended, supplemented or otherwise modified, the "2017 First Lien Documents" and, together with the 2012 First Lien Documents and the 2015 First Lien Documents, the "First Lien Documents"), among Hexion Inc. as issuer, the guarantors party thereto and Wilmington Trust, National Association, as trustee for the 2017 First Lien Noteholders (together with the collateral agent for the

2017 First Lien Noteholders, the "<u>2017 First Lien Indenture Trustee</u>" and, together with the 2012 First Lien Indenture Trustee and the 2015 First Lien Indenture Trustee, the "<u>First Lien Indenture Trustee</u>"; the First Lien Indenture Trustee, together with the 2012 First Lien Noteholders, 2015 First Lien Noteholders, and 2017 First Lien Noteholders, collectively, the "<u>First Lien Secured Parties</u>");

(iv)   the noteholders (collectively, the "<u>1.5 Lien Noteholders</u>") under the Indenture, dated as of February 8, 2017 (as amended, supplemented or otherwise modified, the "<u>1.5 Lien Indenture</u>", and together with all security, pledge and guaranty agreements and all other documentation executed in connection with the foregoing, each as amended, supplemented or otherwise modified, the "<u>1.5 Lien Documents</u>"), among Hexion Inc. as issuer, the guarantors party thereto and Wilmington Savings Fund Society, FSB as successor trustee for the 1.5 Lien Noteholders (together with the collateral agent for the 1.5 Lien Noteholders, the "<u>1.5 Lien Indenture Trustee</u>"); and

(v)   the noteholders (collectively, the "<u>Second Lien Noteholders</u>") under the Indenture, dated as of November 5, 2010 (as amended, supplemented or otherwise modified, the "<u>Second Lien Indenture</u>", and together with all security, pledge and guaranty agreements and all other documentation executed in connection with the foregoing, each as amended, supplemented or otherwise modified, the "<u>Second Lien Documents</u>"; the Second Lien Documents collectively with the Prepetition ABL Documents, the 2012 First Lien Documents, the 2015 First Lien Documents, the 2017 First Lien Documents and the 1.5 Lien Documents, the "<u>Prepetition Debt Documents</u>"), among Hexion U.S. Finance Corp. and Hexion Nova Scotia Finance, ULC as issuers, the guarantors party thereto and Wilmington Trust Company as trustee for the Second Lien Noteholders (together with the collateral agent for the Second Lien Noteholders, the "<u>Second Lien Indenture Trustee</u>", and together with the Prepetition ABL Agent, the 2012 First Lien Indenture Trustee, the 2015 First Lien Indenture Trustee, the 2017 First Lien Indenture Trustee and the 1.5 Lien Indenture Trustee, the "<u>Prepetition Agents</u>"; and the Prepetition Agents collectively with the Prepetition ABL Lenders, the First Lien Noteholders, the 1.5 Lien Noteholders and the Second Lien Noteholders, the "<u>Prepetition Secured Parties</u>");

(VI)   authorization for the DIP Agents to exercise remedies under the DIP Documents upon the occurrence and during the continuance of an Event of Default (as defined in the DIP ABL Agreement and the DIP Term Loan Agreement, as applicable);

(VII) authorization for the Debtors to perform their obligations under, and pay the fees set forth in the Commitment/Fee Letters;

6

(VIII) subject to entry of the Final Order (as defined in clause (XII) below), authorization to grant liens to the DIP Agents on the proceeds of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under chapter 5 of the Bankruptcy Code (collectively, the "Avoidance Actions");

(IX) the waiver by the Debtors of any right to seek to surcharge against the DIP ABL Collateral and the DIP Term Loan Collateral (each as defined in paragraph 8 below) or, subject to entry of the Final Order, the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code;

(X) subject to certain challenge rights of parties in interest, approval of certain stipulations by the Debtors with respect to the Prepetition Debt Documents and the liens and security interests arising therefrom;

(XI) to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of this Interim Order; and

(XII) to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing and approving on a final basis the relief requested in the Motion, including without limitation, for the U.S. ABL Borrowers to borrow the balance of the DIP ABL Loans, for the Debtors to continue to use the Cash Collateral and the other Prepetition Collateral and for the Debtors to grant adequate protection to the Prepetition Secured Parties.

The Interim Hearing having been held by this Court on April 2, 2019, and upon the record made by the Debtors at the Interim Hearing, including without limitation, the admission into evidence of the *Declaration of George F. Knight, Chief Financial Officer of Hexion Inc., in*

7

*Support of Chapter 11 Petitions and First Day Pleadings*, the *Declaration of Randall S. Eisenberg in Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Adequate Protection to Prepetition Secured Lenders, (II) Scheduling a Final Hearing, and (III) Granting Related Relief to Approve DIP Financing*, and the *Declaration of Zul Jamal in Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Adequate Protection to Prepetition Secured Lenders, (II) Scheduling a Final Hearing, and (III) Granting Related Relief to Approve DIP Financing*, each of which were filed on the Petition Date, and the other evidence submitted or adduced and the arguments of counsel made at the Interim Hearing, and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.    *Jurisdiction*.  This Court has core jurisdiction over the Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    *Notice*.  Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Debtors on (i) the United States Trustee for the District of Delaware (Attn: Linda J. Casey, Esq.); (ii) the Debtors' fifty (50) largest unsecured creditors on a consolidated basis; (iii) counsel to the DIP Agents; (iv) counsel to the Prepetition ABL Agent; (v) counsel to the First Lien Indenture Trustee; (vi) counsel to the 1.5 Lien Indenture Trustee; (vii) counsel to the Second Lien Indenture Trustee; (viii) counsel to the ad hoc group of certain First Lien Noteholders represented by Akin Gump Strauss Hauer & Feld LLP (the "Ad Hoc Group of First Lien Noteholders"); (ix) counsel to the ad hoc group of 1.5 Lien Noteholders represented by

8

Jones Day (the "<u>Ad Hoc Group of 1.5 Lien Noteholders</u>"); (x) counsel to the ad hoc group of certain First Lien Noteholders, 1.5 Lien Noteholders, Second Lien Noteholders and unsecured noteholders represented by Milbank LLP (the "<u>Ad Hoc Crossover Group</u>"); (xi) the United States Securities and Exchange Commission; (xii) the Internal Revenue Service; (xiii) the financial institutions where the Debtors maintain deposit accounts.  Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and the Interim Hearing complies with Bankruptcy Rules 4001(b) and (c) and applicable Local Rules.

3.      *Approval of Motion.*  The relief requested in the Motion is granted as set forth herein.  Any objection to the entry of this Interim Order that has not been withdrawn, waived, resolved or settled, is hereby denied and overruled on the merits.

4.      *Debtors' Stipulations.*  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraphs 21 and 22 below), the Debtors admit, stipulate, and agree that:

<u>Prepetition ABL Agreement</u>

(a)      as of the Petition Date, the Debtors, the Non-Debtor Borrowers and their non-Debtor affiliates party to or otherwise obligated under the Prepetition ABL Documents were truly and justly indebted and liable to the Prepetition ABL Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $346.3 million in respect of loans and other extensions of credit made and Prepetition Letters of Credit issued pursuant to the Prepetition ABL Documents, plus accrued and unpaid interest thereon and any fees and expenses (including fees and expenses of attorneys) related thereto, to the extent provided in the Prepetition ABL Documents, plus all other outstanding amounts that would constitute Obligations under and as defined in the Prepetition ABL

Agreement (collectively, the "Prepetition ABL Obligations"). Pursuant to the Prepetition ABL Facility, Hexion Inc. entered into the following Secured Hedge Agreements (as defined in the Prepetition ABL Credit Agreement), which remain outstanding as of the date hereof: (i) that certain commodity swap confirmation by and between Hexion Inc. and Wells Fargo Bank, N.A., dated June 19, 2018 (the "Wells Fargo Commodity Hedge") and (ii) that certain commodity swap confirmation by and between Hexion Inc. and JPMorgan Chase Bank, National Association, New York Branch, dated October 26, 2018 (the "JPM Commodity Hedge" and, together with the Wells Fargo Commodity Hedge, the "Commodity Hedges");

(b) the liens and security interests granted by the Debtors to the Prepetition ABL Agent (for the ratable benefit of the Prepetition ABL Lenders) to secure the Prepetition ABL Obligations (the "Prepetition ABL Liens") are (i) valid, binding, perfected, enforceable, first priority liens on and security interests in the Debtors' personal property constituting ABL Priority Collateral (as defined in the ABL Intercreditor Documents referenced below), (ii) valid, binding, perfected, enforceable, second priority liens on and security interests in the Debtors' real and personal property constituting Notes Priority Collateral (as defined in the ABL Intercreditor Agreement; such Notes Priority Collateral together with the ABL Priority Collateral of the Debtors, including all Cash Collateral, the "Prepetition Collateral")[2], (iii) not subject to avoidance, recharacterization or, except as set forth in the ABL Intercreditor Agreement, subordination pursuant to the Bankruptcy Code or other applicable law and (iv) subject and subordinate only to other valid and unavoidable liens perfected prior to the Petition Date (or perfected after the Petition Date to the extent

---

[2] The terms "Prepetition ABL Liens" and "Prepetition Collateral" are defined by reference only to assets and property of the Debtors (and liens thereon), and therefore, the terms Prepetition ABL Liens and Prepetition Collateral exclude any assets or property of any Non-Debtor Borrower or other non-Debtor affiliate of any Debtor that may be pledged as collateral (and liens thereon).

permitted by section 546(b) of the Bankruptcy Code) to the extent such liens are senior to the liens securing the Prepetition ABL Obligations;

(c)    the liens and security interests granted to the Prepetition ABL Agent (for the ratable benefit of the Prepetition ABL Lenders) by the Non-Debtor Borrowers and their non-Debtor affiliates party to or otherwise obligated under the Prepetition ABL Documents to secure the Prepetition ABL Obligations are (i) valid, binding, perfected, enforceable, first priority (subject to permitted exceptions under the Prepetition ABL Agreement) liens on and security interests in such Non-Debtor Borrowers' and non-Debtor affiliates' personal property constituting Collateral (as defined in the Prepetition ABL Agreement), (ii) not subject to avoidance, recharacterization or subordination pursuant to any applicable law and (iii) subject and subordinate only to other valid and unavoidable liens to the extent such liens are senior to the liens securing the Prepetition ABL Obligations;

First Lien Notes

(d)    as of the Petition Date, the Debtors party to or otherwise obligated under the 2012 First Lien Documents were truly and justly indebted to the 2012 First Lien Noteholders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $1,550,000,000 in respect of notes held by the 2012 First Lien Noteholders pursuant to the 2012 First Lien Documents, plus accrued and unpaid interest thereon and any fees and expenses of the 2012 First Lien Indenture Trustee (including fees and expenses of attorneys) related thereto to the extent provided in the 2012 First Lien Documents, plus all other outstanding amounts that would constitute Obligations under and as defined in the 2012 First Lien Indenture (collectively, the "2012 First Lien Obligations");

US-DOCS\106845558.12

(e)    as of the Petition Date, the Debtors party to or otherwise obligated under the 2015 First Lien Documents were truly and justly indebted to the 2015 First Lien Noteholders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $315,000,000 in respect of notes held by the 2015 First Lien Noteholders pursuant to the 2015 First Lien Documents, plus accrued and unpaid interest thereon and any fees and expenses of the 2015 First Lien Indenture Trustee (including fees and expenses of attorneys) related thereto to the extent provided in the 2015 First Lien Documents, plus all other outstanding amounts that would constitute Obligations under and as defined in the 2015 First Lien Indenture (collectively, the "2015 First Lien Obligations");

(f)    as of the Petition Date, the Debtors party to or otherwise obligated under the 2017 First Lien Documents were truly and justly indebted to the 2017 First Lien Noteholders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $560,000,000 in respect of notes held by the 2017 First Lien Noteholders pursuant to the 2017 First Lien Documents, plus accrued and unpaid interest thereon and any fees and expenses of the 2017 First Lien Indenture Trustee (including fees and expenses of attorneys) related thereto to the extent provided in the 2017 First Lien Documents, plus all other outstanding amounts that would constitute Obligations under and as defined in the 2017 First Lien Indenture (collectively, the "2017 First Lien Obligations" and, together with the 2012 First Lien Obligations and the 2015 First Lien Obligations, the "First Lien Obligations");

(g)    the liens and security interests granted by the Debtors to the First Lien Indenture Trustee (for the ratable benefit of the First Lien Noteholders) to secure the First Lien Obligations (the "Prepetition First Liens") are (i) valid, binding, perfected, enforceable,

first priority (subject to permitted exceptions under the First Lien Documents) liens on and security interests in the Prepetition Collateral constituting Notes Priority Collateral (as defined in the ABL Intercreditor Agreement), (ii) valid, binding, perfected, enforceable, second priority (subject to permitted exceptions under the First Lien Documents) liens on and security interests in the Prepetition Collateral constituting ABL Priority Collateral (as defined in the ABL Intercreditor Agreement), (iii) not subject to avoidance, recharacterization or, except as set forth in the ABL Intercreditor Agreement and the First Lien Intercreditor Agreement, subordination pursuant to the Bankruptcy Code or other applicable law and (iv) subject and subordinate only to (A) after giving effect to this Interim Order, the Carve-Out and the liens and security interests granted to secure the DIP ABL Obligations and the First Lien Adequate Protection Liens, (B) prior to final and irrevocable repayment in full of the Prepetition ABL Obligations, the liens securing the Prepetition ABL Obligations with respect to the ABL Priority Collateral and (C) other valid and unavoidable liens perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) to the extent such liens are senior to the liens securing the First Lien Obligations;

### 1.5 Lien Notes

(h)    as of the Petition Date, the Debtors party to or otherwise obligated under the 1.5 Lien Documents were truly and justly indebted to the 1.5 Lien Noteholders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $225,000,000 in respect of notes held by the 1.5 Lien Noteholders pursuant to the 1.5 Lien Documents, plus accrued and unpaid interest thereon and any fees and expenses of the 1.5 Lien Indenture Trustee (including fees and expenses of attorneys) related thereto to

the extent provided in the 1.5 Lien Documents, plus all other outstanding amounts that would constitute Obligations under and as defined in the 1.5 Lien Indenture (collectively, the "1.5 Lien Obligations");

(i)    the liens and security interests granted to the 1.5 Lien Indenture Trustee (for the ratable benefit of the 1.5 Lien Noteholders) to secure the 1.5 Lien Obligations (the "Prepetition 1.5 Liens") are (i) valid, binding, perfected, enforceable, third priority (subject to permitted exceptions under the 1.5 Lien Documents) liens on and security interests in the Prepetition Collateral, (ii) not subject to avoidance, recharacterization or subordination (except as set forth in the 1.5 Lien Intercreditor Agreement (as defined in paragraph 4(o) below)) pursuant to the Bankruptcy Code or applicable nonbankruptcy law, and (iii) subject and subordinate only to (A) after giving effect to this Interim Order, the Carve-Out, the liens and security interests granted to secure the DIP ABL Obligations, the First Lien Adequate Protection Liens and the 1.5 Lien Adequate Protection Liens, (B) prior to final and irrevocable repayment in full of the Prepetition ABL Obligations, liens securing the  Prepetition ABL Obligations, (C) prior to final and irrevocable payment in full of the First Lien Obligations, the liens securing the First Lien Obligations and (D) other valid and unavoidable liens perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) to the extent such liens are senior to the liens securing the 1.5 Lien Obligations;

Second Lien Notes

(j)    as of the Petition Date, the Debtors party to or otherwise obligated under the Second Lien Documents (as defined below) were truly and justly indebted to the Second Lien Noteholders, without defense, counterclaim or offset of any kind, in the

14

aggregate principal amount of not less than $574,000,000 in respect of notes held by the Second Lien Noteholders pursuant to the Second Lien Documents, plus accrued and unpaid interest thereon and any fees and expenses of the Second Lien Indenture Trustee (including fees and expenses of attorneys) related thereto to the extent provided in the Second Lien Documents, plus all other outstanding amounts that would constitute Obligations under and as defined in the Second Lien Notes Indenture (collectively, the "Second Lien Obligations");

(k)    the liens and security interests granted to the Second Lien Indenture Trustee (for the ratable benefit of the Second Lien Noteholders) to secure the Second Lien Obligations (the "Prepetition Second Liens" and, together with the Prepetition ABL Liens, Prepetition First Liens, and Prepetition 1.5 Liens, the "Prepetition Liens") are (i) valid, binding, perfected, enforceable, fourth priority (subject to permitted exceptions under the Second Lien Documents) liens on and security interests in the Prepetition Collateral, (ii) not subject to avoidance, recharacterization or subordination (except as set forth in the Second Lien Intercreditor Agreement (as defined in paragraph 4(p) below)) pursuant to the Bankruptcy Code or applicable nonbankruptcy law, and (iii) subject and subordinate only to (A) after giving effect to this Interim Order, the Carve-Out and the liens and security interests granted to secure the DIP Loans and the Adequate Protection Obligations, (B) prior to final and irrevocable repayment in full of the  Prepetition ABL Obligations, liens securing the Prepetition ABL Obligations, (C) prior to final and irrevocable repayment in full of the First Lien Obligations, the liens securing the First Lien Obligations and (D) prior to final and irrevocable repayment in full of the 1.5 Lien Obligations, the liens securing the 1.5 Lien Obligations, and (D) other valid and unavoidable liens perfected prior to the Petition Date (or

perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) to the extent such liens are senior to the liens securing the Second Lien Obligations;

(l)      (i) no portion of the Prepetition ABL Obligations, the First Lien Obligations, the 1.5 Lien Obligations, or the Second Lien Obligations shall be subject to avoidance, recharacterization, recovery or, except with respect to subordination as set forth in the Prepetition Intercreditor Agreements, subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (ii) the Debtors do not have, and hereby forever release, any claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code, applicable nonbankruptcy law or any agreement, against any of the DIP Agents, DIP Lenders, DIP Arrangers, Prepetition Secured Parties and each of their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors, each in their capacity as such, in each case in connection with any act, omission, transaction or occurrence occurring in full or in part prior to the date of entry of this Interim Order, in each case related to the DIP Documents, Prepetition ABL Obligations, the Prepetition ABL Documents or the financing and transactions contemplated thereby, the First Lien Obligations, the First Lien Documents or the financing and transactions contemplated thereby, the 1.5 Lien Obligations, the 1.5 Lien Documents or the financing and transactions contemplated thereby, the Second Lien Obligations, the Second Lien Documents or the financing and transactions contemplated thereby or the Prepetition Collateral.

(m)      The Prepetition ABL Agent, the First Lien Indenture Trustee, Hexion Inc. (f/k/a Momentive Specialty Chemicals Inc.) and certain of Hexion Inc.'s subsidiaries entered into the ABL Intercreditor Agreement, dated as of March 28, 2013  (as amended, supplemented or otherwise modified, the "ABL Intercreditor Agreement"), to set forth the

US-DOCS\106845558.12

relative lien priorities and other rights and remedies of the Prepetition ABL Secured Parties and the First Lien Secured Parties with respect to, among other things, the Prepetition Collateral.

(n)     The First Lien Indenture Trustee, Holdings, Hexion Inc. and certain of Hexion Inc.'s subsidiaries entered into that certain First Lien Intercreditor Agreement, dated as of April 15, 2015  (as amended, supplemented or otherwise modified, the "First Lien Intercreditor Agreement"), to set forth the relative lien priorities and other rights and remedies of the First Lien Noteholders with respect to, among other things, the Prepetition Collateral that constitutes Shared Collateral under and as defined in the First Lien Intercreditor Agreement.

(o)     The First Lien Indenture Trustee, the 1.5 Lien Indenture Trustee, the Prepetition ABL Agent, Holdings, Hexion Inc. and certain of Holdings' subsidiaries entered into that certain Amended and Restated Intercreditor Agreement, dated as of February 8, 2017 (as amended, supplemented or otherwise modified, the "1.5 Lien Intercreditor Agreement"), to set forth the relative lien priorities and other rights and remedies of the Prepetition ABL Secured Parties and the First Lien Secured Parties, on the one hand, and the 1.5 Lien Noteholders, on the other hand, with respect to, among other things, the Prepetition Collateral.

(p)     The Second Lien Indenture Trustee, the First Lien Indenture Trustee, the 1.5 Lien Indenture Trustee, the Prepetition ABL Agent, Holdings, Hexion Inc. and certain of Holdings' subsidiaries entered into that certain Amended and Restated Intercreditor Agreement, dated as of January 31, 2013 (as amended, supplemented or otherwise modified, the "Second Lien Intercreditor Agreement", together with the ABL Intercreditor Agreement,

US-DOCS\106845558.12

the First Lien Intercreditor Agreement, and the 1.5 Lien Intercreditor Agreement, the "Prepetition Intercreditor Agreements"), to set forth the relative lien priorities and other rights and remedies of the Prepetition ABL Secured Parties, First Lien Secured Parties and the 1.5 Lien Secured Parties, on the one hand, and the Second Lien Secured Parties, on the other hand, with respect to, among other things, the Prepetition Collateral.

(q)     The aggregate value of the Prepetition ABL Collateral securing the Prepetition ABL Obligations exceeds the aggregate amount of the Prepetition ABL Obligations.

5.     *Findings Regarding the DIP Loans, Use of Cash Collateral, and Adequate Protection.*

(a)     Good cause has been shown for the entry of this Interim Order.

(b)     The Debtors have an immediate need to directly or indirectly obtain the DIP Loans and to use the Prepetition Collateral, including the Cash Collateral, in order to, among other things, permit the orderly continuation of their businesses, preserve the going concern value of the Debtors and their non-Debtor affiliates, make payroll, maintain business relationships with vendors and suppliers, and satisfy other working capital and general corporate purposes of the Debtors (including costs related to the Cases) and repay in full the Prepetition ABL Obligations, a critical step to permit the Debtors to obtain this financing.

(c)     Repayment in full of the Prepetition ABL Obligations with the initial proceeds of the DIP Loans is appropriate because (i) the aggregate value of the Prepetition Collateral securing the Prepetition ABL Obligations exceeds the aggregate amount of the Prepetition ABL Obligations, (ii) parties would be able to exercise remedies against the Non-Debtor Borrowers and their assets because certain events of default under the Prepetition ABL Documents have occurred and are continuing as a result of the commencement of the

18

Cases and any other defaults thereunder, which would impair the value of the Debtors' interests in such Non-Debtor Borrowers, thereby diminishing the Debtors' overall enterprise value, and (iii) it is a condition to closing under the DIP Credit Agreements that the initial proceeds of the DIP Loans be used to repay in full the Prepetition ABL Obligations so that the Debtors' assets that secure the Prepetition ABL Obligations  on a first lien basis will be available to secure on a first lien basis the DIP ABL Obligations (as defined in paragraph 6(b) below).  The DIP ABL Facility and DIP ABL Agreement shall constitute an "ABL Facility" and a "Credit Agreement," respectively, as such terms are defined in, and for purposes under, each applicable Prepetition Intercreditor Agreement.

(d)     The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors are also unable to obtain sufficient asset-based revolving credit without granting the priming DIP ABL Liens to secure the DIP ABL Facility under section 364(d)(1) of the Bankruptcy Code and the Superpriority Claims (as defined in paragraph 7(a) below) and repaying in full the Prepetition ABL Obligations, in each case on the terms and conditions set forth in this Interim Order and the DIP Documents.  The Debtors are unable to obtain sufficient term loan financing without (i) granting the DIP Term Loan Liens pursuant to section 364(c)(2) and 364(c)(3) of the Bankruptcy Code and the Superpriority Claims, and (ii) having the DIP Intercompany Loan Obligations (as defined in paragraph 6(f) below) be subordinated to the DIP Obligations (but not to any other indebtedness or other obligations of any kind or nature of the DIP Term Loan Facility Guarantors or DIP ABL Facility Guarantors).

19

(e)    The terms of the DIP Loans and the use of the Prepetition Collateral (including the Cash Collateral) pursuant to this Interim Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(f)    The Prepetition Secured Parties have agreed to not object (and/or are deemed not to object under the terms of the Prepetition Intercreditor Agreements) to the Debtors' use of Cash Collateral and the other Prepetition Collateral, and the Debtors' entry into the DIP Documents, including the granting of claims and liens and the performance of their obligations thereunder, in each case, in accordance with and subject to the terms and conditions in this Interim Order and the DIP Documents.

(g)    The DIP Financing and the use of the Prepetition Collateral (including the Cash Collateral) have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the DIP Agents, the DIP Lenders, the DIP Arrangers, and the Prepetition Secured Parties.  All of the Debtors' obligations and indebtedness arising under or in connection with (i) the DIP ABL Documents, any permitted secured hedging or cash management agreements to which any Debtor and any DIP ABL Lender are party thereunder, this Interim Order and the DIP ABL Loans (collectively, the "DIP ABL Obligations"), (ii) the DIP Term Loan Documents, this Interim Order and the DIP Term Loans (collectively, the "DIP Term Loan Obligations", and together with the DIP ABL Obligations, the "DIP Obligations") and (iii) the DIP Intercompany Loan Obligations, shall be deemed to have been extended by the applicable DIP Agents and DIP Lenders, and the DIP Intercompany Lender, in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be

20

entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified on appeal or otherwise. The Prepetition Secured Parties have acted in good faith regarding the DIP Financing and the Debtors' continued use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Debtors' estates and continued operation of their businesses (including the incurrence and payment of the Adequate Protection Obligations and the granting of the Adequate Protection Liens), in accordance with the terms hereof, and the Prepetition Secured Parties (and the successors and assigns thereof), shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise. Therefore the claims, superpriority claims, security interests, liens, and other protection granted pursuant to this Interim Order (and, subject to entry by the Court, the Final Order) and the DIP Documents should be preserved to the extent provided for by paragraph 20 of this Interim Order.

       (h)    The adequate protection provided to the Prepetition Secured Parties, as set forth more fully in paragraphs 13, 16, 17 and 18 of this Interim Order, for any diminution in the value of the Prepetition Secured Parties' respective interests in the Prepetition Collateral (including the Cash Collateral) from and after the Petition Date resulting from, *inter alia*, the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "Automatic Stay"), the Debtors' use of any Prepetition Collateral (including the Cash Collateral) pursuant to section 363 of the Bankruptcy Code, and the granting of the priming DIP ABL Liens pursuant section 364(d) of the Bankruptcy Code, in each case in accordance with this Interim Order, is consistent with and authorized by the Bankruptcy

US-DOCS\106845558.12

Code and is offered by the Debtors to protect the Prepetition Secured Parties' interests in the Prepetition Collateral (including the Cash Collateral) in accordance with sections 361, 362, 363, and 364 of the Bankruptcy Code.  As of the date of this Interim Order, and without prejudice to the rights of the Prepetition Secured Parties to seek additional adequate protection based on changed circumstances or following the termination of the rights to use Cash Collateral pursuant to this Interim Order, the adequate protection provided herein and other benefits and privileges contained herein are sufficient to protect the Prepetition Secured Parties from diminution in value of their respective interests in their Prepetition Collateral (including the Cash Collateral) resulting from the imposition of the Automatic Stay, the incurrence of the DIP Loans and the use of the Prepetition Collateral (including the Cash Collateral) contemplated by this Interim Order.

(i)      The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent granting the interim relief set forth in this Interim Order, the Debtors' estates and their business operations will be immediately and irreparably harmed.  The borrowing of the DIP Loans and the use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Interim Order and the DIP Documents are, therefore, in the best interest of the Debtors' estates.

6.    *Authorization of the DIP Obligations, DIP Intercompany Loan Borrowings, and the DIP Documents.*

(a)      The Debtors are hereby authorized (i) to enter into and perform under the DIP Documents, (ii) in the case of the U.S. Borrower, to incur up to an aggregate principal amount of $250,000,000 of DIP Obligations under the DIP ABL Agreement (including in respect of Prepetition Letters of Credit deemed to be issued under the DIP ABL Facility in accordance with paragraph 6(b) below and other letters of credit that may be

22

issued from time to time under the DIP ABL Facility), (iii) in the case of the DIP Intercompany Borrower, to borrow from the DIP Intercompany Lender under the DIP Intercompany Loan up to an aggregate principal amount of $350,000,000, the collective proceeds of which shall be used for, subject to the terms of the DIP Documents, working capital and other general corporate purposes of the Debtors (including costs related to the Cases), including without limitation, to pay interest, fees and expenses in connection with the DIP Loans and the Adequate Protection Obligations and to repay in full the Prepetition ABL Obligations and (iv) as applicable, to guarantee the obligations of DIP Borrowers under the DIP Documents, including the guaranteeing of such obligations of the Non-Debtor Borrowers.

(b)     Upon the closing of the DIP ABL Facility, all Prepetition Letters of Credit are hereby deemed letters of credit issued and outstanding under the DIP ABL Facility.

(c)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and empowered to perform, and to cause any non-Debtor to perform, all acts and to execute and deliver all instruments and documents that each of the DIP Agents determines to be reasonably required or necessary for the Debtors' performance of their obligations under the applicable DIP Documents, including without limitation:

(i)     the execution, delivery and performance of the DIP Documents;

(ii)     the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in accordance with the terms of the applicable DIP Documents and in such form as the Debtors, the applicable DIP Agent and the

applicable DIP Lenders may agree, and no further approval of this Court shall be required for any amendment, waiver, consent or other modification to and under the DIP Documents (and any fees paid in connection therewith) that do not materially or adversely affect the Debtors or which do not (A) shorten the maturity of the DIP Loans, (B) increase the principal amount of, the rate of interest on, or fees payable in connection with, the DIP Loans, other than customary amendment or consent fees, or (C) change any Event of Default, add any covenants or amend or otherwise modify the covenants therein, in any such case to be materially more restrictive; provided, however, that a copy of any such amendment, waiver, consent or other modification shall be filed by the Debtors with this Court and served by the Debtors on the U.S. Trustee, counsel to the Prepetition Agents, counsel to the Ad Hoc Group of First Lien Noteholders, counsel to the Ad Hoc Group of 1.5 Lien Noteholders, counsel to the Ad Hoc Crossover Group and counsel to any statutory committee of unsecured creditors appointed in the Cases (the "Committee") two business days in advance of its effectiveness; and provided further that, without further approval of this Court, in connection with the syndication of the DIP Term Loan Facility and/or DIP ABL Facility, certain amendments to the DIP Documents may be made at any time on or prior to the date that is sixty (60) days after the DIP Closing Date, as provided by the Commitment/Fee Letters;

(iii)    the non-refundable payment to the DIP Agents, the DIP Arrangers and the DIP Lenders, as the case may be, of the commitment, underwriting, structuring, arranger and administrative agency fees set forth in the applicable

24

DIP Documents as described in the Motion and/or referred to in one or more commitment and fee letters executed among the Debtors and the respective DIP Agents and/or the DIP Arrangers attached to the Motion as <u>Exhibits B and C</u> (collectively, the "<u>Commitment/Fee Letters</u>"); and

        (iv)    the performance of all other acts required or that the Debtors determine to be advisable under or in connection with the DIP Documents.

     (d)    Each Debtor is authorized to perform its respective obligations under the applicable Commitment/Fee Letters, on the terms, and subject to the conditions, set forth in the applicable Commitment/Fee Letters.

     (e)    Upon the execution thereof, the DIP Documents shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with the terms of this Interim Order and the DIP Documents.  No obligation, payment, transfer or grant of security by the Debtors under the DIP Documents or this Interim Order shall be voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transactions Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

     (f)    The obligations of the DIP Intercompany Borrower under the DIP Intercompany Loan (the "<u>DIP Intercompany Loan Obligations</u>") shall be a superpriority administrative expense claim of the DIP Intercompany Lender against the DIP Intercompany Borrower, which claim shall be subordinated only to the payment in full of the DIP

Obligations.[3]    No obligation, payment, or transfer by the Debtors under the DIP Intercompany Loan or this Interim Order shall be voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transactions Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

(g)    The initial 5-week budget annexed hereto as Exhibit A (the "Initial DIP Budget") is hereby approved.  The Debtors shall use the proceeds of the DIP Financing and Cash Collateral in accordance with the DIP Budget.

7.    *Superpriority Claims.*

(a)    Except to the extent expressly set forth in this Interim Order in respect of the Carve-Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations and DIP Intercompany Loan Obligations shall constitute allowed senior administrative expense claims (the "Superpriority Claims") against the Debtors with priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 328, 330, 331, 503(b), 507(a) (other than 507(a)(1)), 507(b), 1113 or 1114 of the Bankruptcy Code; *provided*, that the Superpriority Claims arising from the

---

[3] As used herein, the phrase "payment in full of the DIP Obligations" or any similar phrase shall mean the indefeasible payment of all outstanding obligations under the DIP Documents in cash, the termination of the commitments under the DIP ABL Agreement and the cash collateralization of any letter of credit issued under the DIP ABL Agreement, in each case, in accordance with the applicable terms of the respective DIP Documents.

26

DIP ABL Obligations shall be *pari passu* with the Superpriority Claims arising from the DIP Term Loan Obligations; and *provided, further*, that the Superpriority Claims arising from the DIP Intercompany Loan Obligations shall be (i) subordinated to the Superpriority Claims arising from the DIP ABL Obligations and DIP Term Loan Obligations and (ii) notwithstanding anything herein to the contrary, shall be only Superpriority Claims against Hexion Inc.

        (b)     For purposes hereof, the "Carve-Out" shall mean (i) all fees required to be payable to the Clerk of the Bankruptcy Court and to the Office of the U.S. Trustee pursuant to section 1930(a) of title 28 of the United States Code, and any interest on such fees payable pursuant to section 3717 of title 31 of the United States Code, (ii) all reasonable fees and expenses up to $100,000 incurred by a trustee appointed in the Debtors' cases under section 726(b) of the Bankruptcy Code (irrespective of whether the Carve Out Notice (as defined below) has been delivered) and (iii) up to $10,000,000 of allowed and unpaid fees, expenses and disbursements of professionals retained by order of this Court, incurred after the occurrence of a Carve-Out Event (defined below) <u>plus</u> all unpaid professional fees, expenses and disbursements allowed by this Court that were incurred prior to the occurrence of a Carve-Out Event (regardless of when such fees, expenses and disbursements become allowed by order of this Court).  For the purposes hereof, a "<u>Carve-Out Event</u>" shall occur upon the occurrence and during the continuance of an Event of Default under either DIP Credit Agreement (A) written notice of which has been by given by either of the DIP Agents to the Debtors or (B) in respect of which the DIP ABL Borrowers or DIP Term Loan Borrower have knowledge and fail to provide notice to the applicable DIP Agent within five (5) business days of obtaining such knowledge; <u>provided</u>, that, no Carve-Out Event shall be

27

deemed to have occurred for purposes of this Interim Order if any such Event of Default is subsequently waived by the applicable DIP Agent providing notice of, or who is entitled to receive notice of (as applicable), such Event of Default. The Carve-Out shall not be reduced or increased by any amount of any fees, expenses and disbursements paid prior to a Carve-Out Event to professionals retained by order of this Court. Upon the occurrence of a Carve-Out Event, the right of the Debtors to pay professional fees incurred under clause (iii) above in such clause (iii) shall terminate (unless the underlying Event of Default giving rise to the Carve-Out Event is subsequently waived by the DIP Agents) and upon the occurrence of the Carve-Out Event, the Debtors shall provide immediate notice by facsimile and email to all retained professionals informing them that a Carve-Out Event has occurred and that the Debtors' ability to pay professionals is subject to the Carve-Out; provided, that (A) the Carve-Out shall not be available to pay any professional fees and expenses incurred in connection with the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Agents, the DIP Lenders or any Prepetition Secured Party, subject to the investigation budget set forth in paragraph 22 below, and (B) nothing in this Interim Order shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtors' estates. None of the DIP Agents, the DIP Lenders or any Prepetition Secured Party shall be responsible for the payment or reimbursement of any fees or disbursements of any professional person retained in the Cases incurred in connection with the Cases or any successor cases under the Bankruptcy Code, and nothing in this Interim Order or otherwise shall be construed to obligate the DIP Agents, the DIP Lenders or any Prepetition Secured Party, in any way, to pay compensation to, or to reimburse expenses of, any professional person retained in the

Cases or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

8.    *DIP Liens*.  As security for the DIP Obligations, effective and perfected upon the date of this Interim Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Agents of any property, the following security interests and liens are hereby granted by the Debtors to each of the DIP ABL Agent and the DIP Term Loan Agent, as applicable, for itself and the respective benefit of the applicable DIP Lenders, subject and subordinate to the Carve-Out, and having the priorities set forth in this paragraph 8:

(a)    DIP ABL Collateral and Liens. The assets described in the following clauses (i), (ii) and (iii) are herein referred to as the "DIP ABL Collateral" and the liens of the DIP ABL Agent thereon are herein referred to as the "DIP ABL Liens":

(i)    *First Lien on Certain Unencumbered Property*. Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP ABL Agent is granted (A) a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in, all tangible and intangible prepetition and postpetition property of the Debtors of a type that would have been ABL Priority Collateral or Notes Priority Collateral if such Debtor had owned or had an interest in such property immediately prior to the Petition Date, including, without limitation, the U.S. Borrowing Base (as defined in the Prepetition ABL Agreement) and insurance policies (and the proceeds therefrom), whether existing on or as of the Petition Date or thereafter acquired, that is not subject to any Non-Primed Liens (as

29

defined below) (collectively, the "Unencumbered ABL Property"); provided, that (x) the Unencumbered ABL Property shall not include the Avoidance Actions, but subject to entry of the Final Order, Unencumbered ABL Property shall include any proceeds or property recovered in respect of any Avoidance Actions ("Avoidance Action Proceeds"), (y) the Unencumbered ABL Property shall not include the DIP Term Loan Collateral (other than the Avoidance Action Proceeds, which shall be shared collateral) and (z) the liens securing the DIP ABL Obligations on any Unencumbered ABL Property of a type that would have been Notes Priority Collateral if the Debtors had owned or had an interest in such property immediately prior to the Petition Date shall be junior to the First Lien Adequate Protection Liens subject to the terms set forth in the ABL Intercreditor Agreement and (B) a valid, binding, continuing, enforceable, fully-perfected second priority lien on, and security interest in, all DIP Term Loan Collateral, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to any Non-Primed Liens.

(ii)    *Liens Junior to Certain Existing Liens.*   Pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP ABL Agent is granted a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in all tangible and intangible prepetition and postpetition property of the Debtors, whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section

30

546(b) of the Bankruptcy Code, in each case other than the Prepetition Liens (collectively, the "Non-Primed Liens") (other than the property described in paragraph 8(a)(ii) below, as to which the DIP ABL Liens will have the priority as described in such clause), which security interests and liens in favor of the DIP ABL Agent and the DIP ABL Lenders shall be junior to the Non-Primed Liens; *provided*, that (x) the liens securing the DIP ABL Obligations on any of the assets described in this clause (ii) that are of a type that would have been Notes Priority Collateral if the Debtors had owned or had an interest in any such property immediately prior to the Petition Date, which shall be deemed to be Prepetition Collateral for purposes of the ABL Intercreditor Agreement and subject to the Prepetition First Liens, shall be junior to the First Lien Adequate Protection Liens and deemed Prepetition First Liens on such assets subject to the terms set forth in the ABL Intercreditor Agreement and (y) the liens securing the DIP ABL Obligations on any DIP Term Loan Collateral shall be junior to the DIP Term Loan Liens.

(iii)    *Liens Priming the Liens of the Prepetition Secured Parties on the Prepetition Collateral.* As a result of the amendment and restatement of the Prepetition ABL Agreement to become the DIP ABL Agreement on the DIP Closing Date (as defined in the DIP ABL Agreement), the security interests and liens granted pursuant to the Prepetition ABL Documents to secure the Prepetition ABL Obligations shall be reaffirmed pursuant to the DIP Documents, and all of the Prepetition Collateral subject to such reaffirmed security interests and liens granted by the Debtors shall be deemed to be included among the DIP ABL

US-DOCS\106845558.12

Collateral on and after the DIP Closing Date granted pursuant to this Interim Order to secure the DIP ABL Obligations with priority over all other liens held by any other Prepetition Secured Party and over all other liens that were junior to the ABL Priority Liens as of the Petition Date.  Without limiting the foregoing, pursuant to section 364(d)(1) of the Bankruptcy Code, the DIP ABL Agent is granted a valid, binding, continuing, enforceable, fully perfected first priority, senior priming lien on, and security interest in, all Prepetition Collateral, including, without limitation, insurance policies and the proceeds therefrom, whether now existing or hereafter acquired, *provided*, that such lien shall be immediately junior to (x) liens on the Notes Priority Collateral securing the First Lien Obligations, including the Prepetition First Liens and the First Lien Adequate Protection Liens subject to the terms of the ABL Intercreditor Agreement and (y) any Non-Primed Liens on such Prepetition Collateral that were senior to the ABL Priority Liens as of the Petition Date.

(b)    DIP Term Loan Collateral and Liens.  The assets described in the following clauses (i) and (ii) are herein referred to as the "DIP Term Loan Collateral" (together with the DIP ABL Collateral, collectively, the "DIP Collateral") and the liens of the DIP Term Loan Agent thereon are herein referred to as the "DIP Term Loan Liens" (together with the DIP ABL Liens, the "DIP Liens"):[4]

---

[4]  The term "DIP Liens" is defined by reference only to liens and security interests granted to the DIP Agents pursuant to this Interim Order on assets and property of the Debtors, and therefore, no DIP Liens are granted pursuant to this Interim Order on any assets or property of any Non-Debtor Borrower or any non-Debtor affiliate of any Debtor. Pursuant to the DIP ABL Documents, the DIP ABL Agent is also granted liens on certain property of Non-Debtor Borrowers and certain non-Debtor affiliates, such as receivables, and the DIP Term Loan Agent is granted liens on certain property of the DIP Term Loan Borrower that are not granted to the DIP ABL Agent, including 100% of the equity interests in the direct subsidiaries of the DIP Term Loan Borrower and the DIP Term Loan Borrower's rights in the DIP Intercompany Loan.

US-DOCS\106845558.12

(i)    Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Term Loan Agent is granted a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in, (A) all Principal Properties (as defined in the Indenture, dated as of December 15, 1987, between Hexion Inc. (f/k/a Borden, Inc.) and The Bank of New York, as trustee) as of the Petition Date and any other property that becomes a Principal Property after the Petition Date, subject only to any Non-Primed Liens, (B) all equity interests in a subsidiary of a Debtor (including any subsidiary that is itself a Debtor and 35% of the voting equity interests in the first-tier foreign subsidiaries of the Debtors), subject to any Permitted Non-Primed Liens, and (C) all other tangible and intangible prepetition and postpetition property of the Debtors, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to Non-Primed Liens (collectively, the "Unencumbered Term Loan Property"); provided, that the Unencumbered Term Loan Property shall not include (x) the Avoidance Actions, but shall, subject to entry of the Final Order, include Avoidance Action Proceeds; and (y) any DIP ABL Collateral, including, without limitation, the U.S. Borrowing Base, and (z) any Principal Property that is an Excluded Property pursuant to clause (xiii) of the definition thereof contained in the DIP Term Loan Agreement but only so long as such Principal Property qualifies as an Excluded Property.

(ii)    Pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Term Loan Agent is granted a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in, all other tangible and intangible prepetition and postpetition property of the Debtors that is not DIP ABL

33

Collateral, whether existing on or as of the Petition Date or thereafter acquired, that is subject to Non-Primed Liens, which security interests and liens in favor of the DIP Term Loan Agent and the DIP Term Loan Lenders shall be junior to the Non-Primed Liens.

(c)     <u>Liens Senior to Certain Other Liens</u>.  No claim or lien having a priority senior to or *pari passu* with those granted by this Interim Order to the DIP Agents shall be granted or allowed while any portion of the DIP Obligations remain outstanding, and the DIP Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise; *provided*, the DIP ABL Liens shall be immediately junior to (I) the Non-Primed Liens, (II) in the case of the Notes Priority Collateral, the liens on the Notes Priority Collateral securing the First Lien Obligations, including the First Lien Adequate Protection Liens subject to the terms of the ABL Intercreditor Agreement, and (III) in the case of DIP Term Loan Collateral, the DIP Term Loan Liens; *provided*, further, that the DIP Term Loan Liens shall be immediately junior to any Non-Primed Liens (or, with respect to Principal Properties or pledged equity, the Non-Primed Liens) on the DIP Term Loan Collateral.

9.     *Remedies After Event of Default.*  The automatic stay under section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit the DIP Agents and the DIP Lenders to exercise, (a) immediately upon the occurrence and during the continuance of an Event of Default, all rights and remedies under the applicable DIP Documents, other than

those rights and remedies against the applicable DIP Collateral as provided in clause (b) below, and (b) upon the occurrence and during the continuance of an Event of Default, and the giving of five (5) business days' prior written notice to the Debtors (with a copy to counsel to the Debtors, counsel to the Prepetition Agent, counsel to the Ad Hoc Group of First Lien Noteholders, counsel to the Ad Hoc Group of 1.5 Lien Noteholders, counsel to the Ad Hoc Crossover Group and counsel to the Committee and the U.S. Trustee), all rights and remedies against the DIP Collateral provided for in the applicable DIP Documents and this Interim Order (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the DIP Agents or any DIP Lender); provided that, during the foregoing five (5) business day period the only issue that may be raised by any party in opposition to the exercise of rights and remedies shall be whether an Event of Default has in fact occurred and is continuing, and other than as set forth in the prior clause of this proviso, the Debtors hereby waive their right to seek any relief, whether under section 105 of the Bankruptcy Code or otherwise, that would in any way impair, limit or restrict, or delay the exercise or benefit of, the rights and remedies of the DIP Agents and the DIP Lenders under the DIP Documents or this Interim Order.  In no event shall the DIP Agents, the DIP Lenders or (except as otherwise set forth in this Interim Order) the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Prepetition Collateral.  The provisions of this Interim Order granting the Adequate Protection Liens on DIP Collateral hereunder, including any provisions requiring any party to marshal or otherwise limit or sequence remedies in connection therewith, shall not affect, limit or otherwise modify the rights and remedies of the DIP Agents and DIP Lenders.  Any delay or failure to exercise rights and remedies under the DIP Documents or this Interim Order by any of the DIP Agents or the DIP Lenders shall not constitute a waiver of such

DIP Agent's or any DIP Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable DIP Credit Agreement. No restrictions on the exercise of remedies provided for in this Interim Order shall apply to any exercise of remedies by the DIP Agents, the DIP Lenders, the Prepetition Agents or Prepetition Secured Parties against the Non-Debtor Borrowers or any other non-Debtors or their respective assets, and nothing in this Interim Order shall be interpreted to extend the automatic stay or any other protections to the Non-Debtor Borrowers or any other non-Debtors or their respective assets. Each of the Debtors agrees that it will cooperate with the DIP Agents and the Prepetition Agents and make available and permit the use of all intellectual property of the Debtors and their non-Debtor affiliates in connection with the liquidation, collection, disposition or other realization of the DIP Collateral and Prepetition Collateral, as applicable, without payment of royalty or other compensation.

10.    *Limitation on Charging Expenses Against Collateral.* Except to the extent of the Carve-Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or payments or proceeds remitted to the DIP Agents on behalf of the DIP Lenders, or, subject to and effective upon entry of the Final Order, the Prepetition Collateral, as the case may be, pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agents or the Prepetition Agents, as the case may be, and no such consent shall be implied from any other action or inaction by the DIP Agents or the Prepetition Agents, as the case may be, or the DIP Lenders or Prepetition Secured Parties.

36

11.    *Limitations under Section 552(b) of the Bankruptcy Code.*    The Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to and effective upon entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to any of the Prepetition Secured Parties with respect to (i) proceeds, products, offspring or profits of any of the Prepetition Collateral or (ii) the extension of the Adequate Protection Liens to cover proceeds of the Prepetition Collateral.

12.    *Payments Free and Clear.*    Any and all payments or proceeds remitted to the DIP Agents on behalf of the DIP Lenders, the DIP Intercompany Lender or (except as provided in paragraph 21 of this Interim Order) to the Prepetition Secured Parties pursuant to the provisions of this Interim Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability.

13.    *Prepetition ABL Obligations.*    Subject to the provisions of paragraph 13(a), the Prepetition ABL Obligations shall be paid in full (including all amounts that would constitute "Obligations" under and as defined in the Prepetition ABL Agreement) by the Debtors from the proceeds of the initial borrowing of the DIP Loans and, upon such payment, the commitments of all Prepetition ABL Lenders (other than the DIP Arrangers) under the Prepetition ABL Agreement shall be terminated, and the commitment thereunder of the DIP Arrangers on the DIP Closing Date will be increased to $350,000,000 as the commitment under the DIP ABL Agreement, subject to the terms of the DIP ABL Agreement. Upon such repayment in full of the Prepetition ABL Obligations, all security interests in, and liens on, Prepetition Collateral granted to secure the Prepetition ABL Obligations shall be immediately, and without the necessity of further action, deemed to be included among the DIP ABL Liens granted pursuant to this Interim

Order to secure the DIP ABL Obligations; *provided, however*, that notwithstanding the repayment in full of the Prepetition ABL Obligations as set forth herein, the Commodity Hedges will remain in place and be unaffected by such repayment and may be secured by the DIP ABL Collateral pursuant to, and to the extent provided in, the DIP ABL Agreement, without prejudice to the rights of any parties to such Commodity Hedges under the Bankruptcy Code. Upon the closing of the DIP ABL Facility, the Prepetition Letters of Credit shall be deemed issued and outstanding under the DIP ABL Facility, and neither the Prepetition ABL Agent nor any Prepetition ABL Lender shall have any further obligations or liabilities with respect to such Prepetition Letters of Credit to either the Debtors or the beneficiaries thereof.

(a)     *Adequate Protection for the Prepetition ABL Agent and Prepetition ABL Lenders.* Notwithstanding the payment of the Prepetition ABL Obligations in full by the Debtors from the proceeds of the initial borrowing of the DIP Loans, until such time as the events and conditions applicable to the Prepetition ABL Obligations, the Prepetition ABL Agent and the Prepetition ABL Lenders described in clauses (x), (y) and (z) of the third sentence of paragraph 21 shall have occurred, the Prepetition ABL Agent and the Prepetition ABL Lenders are entitled, pursuant to sections 361, 363(c)(2), and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in value of their interests in the Prepetition Collateral (in each case in respect of their indemnification and reimbursement claims under Section 9.05 of the Prepetition ABL Agreement), ~~any such diminution~~ resulting from the sale, lease or use by the Debtors (or other decline in value) of the Cash Collateral and any other Prepetition Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "Prepetition ABL

US-DOCS\106845558.12

Adequate Protection Obligations"). As adequate protection, the Prepetition ABL Agent and the Prepetition ABL Lenders are hereby granted the following:

        (i)    <u>Fees and Expenses</u>.   The Debtors shall pay all reasonable prepetition and postpetition fees and expenses of the Prepetition ABL Agent and Prepetition ABL Lenders payable under Section 9.05 of the Prepetition ABL Agreement (including, without limitation, reasonable fees and disbursements of counsel and financial advisors to the Prepetition ABL Agent) incurred in connection with (A) the Final Hearing, (B) the enforcement by the Prepetition ABL Agent and Prepetition ABL Lenders of the rights, benefits and privileges granted in this Interim Order or the Final Order in favor of the Prepetition ABL Agent and Prepetition ABL Lenders and (C) any discovery or litigation in connection with any pending or threatened "Claims and Defenses" (as defined in paragraph 21 hereof) which shall have been raised or asserted against the Prepetition ABL Lenders, Prepetition ABL Agent or the Prepetition ABL Obligations, until the resolution thereof by a final, non-appealable order.  None of the fees and expenses payable pursuant to this paragraph 13(a) shall be subject to separate approval by this Court (but the U.S. Trustee, the Debtors and the Committee may object to the reasonableness of such fees and expenses and this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto.  The Debtors shall pay the fees and expenses provided for in this paragraph 13(a) promptly after receipt of monthly invoices therefor, and the Prepetition ABL Agent shall promptly provide

US-DOCS\106845558.12

copies of such invoices to the counsel to the Committee and to the U.S. Trustee. Such invoices shall be copies, which shall not be required to contain detailed time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or any of the benefits of the attorney work product doctrine. The Debtors, the U.S. Trustee and the Committee may object to the reasonableness of the fees, costs and expenses included in any such professional fee invoice; provided that, any such objection shall be barred and deemed waived unless filed with the Bankruptcy Court and served on the applicable professional by 12:00 p.m., prevailing Eastern Time, on the date that is no later than ten (10) days after the objecting party's receipt of the applicable professional fee invoice. If such objection is timely received, the Debtors shall promptly pay the portion of such invoice not subject to such objection, and the Bankruptcy Court shall determine any such objection unless otherwise resolved by the applicable parties. The Debtors' obligation to pay the fees and expenses shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "Prepetition ABL 507(b) Claims"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, *pari passu* with the First Lien 507(b) Claims subject and subordinate only to (i) the Carve-Out and (ii) the Superpriority Claims

US-DOCS\106845558.12

granted in respect of the DIP Obligations and DIP Intercompany Loan Obligations.

(b)     Nothing in this Interim Order or the DIP Documents shall prejudice the rights, remedies and privileges of the Prepetition ABL Agent and the Prepetition ABL Lenders granted in the Bankruptcy Code or as set forth in the Prepetition ABL Documents to the extent the Prepetition ABL Obligations are, after repayment, required to be disgorged or otherwise avoided or reinstated, and all of the Prepetition ABL Agent's and Prepetition ABL Lenders' rights and remedies under the Bankruptcy Code and the Prepetition ABL Documents (including the Prepetition Intercreditor Agreements) are hereby fully preserved, including their right to seek additional or further adequate protection.

14.     *The Cash Collateral.*  Substantially all of the Debtors' cash, including without limitation, all cash and other amounts on deposit or maintained by the Debtors in any account or accounts with any Prepetition Secured Party and any cash proceeds of the disposition of any Prepetition Collateral, constitute proceeds of the Prepetition Collateral and, therefore, are cash collateral of the Prepetition Secured Parties (subject in all cases to the Prepetition Intercreditor Agreements), within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

15.     *Use of Prepetition Collateral (Including Cash Collateral).*  The Debtors are hereby authorized to use the Prepetition Collateral, including the Cash Collateral, during the period from the Petition Date through and including the Termination Date (as defined below) for working capital and general corporate purposes (including costs related to the Cases) in accordance with the terms and conditions of this Interim Order and the DIP Documents (including paragraph 22); provided, that, (a) the Prepetition Secured Parties are granted adequate

41

protection as set forth herein and (b) except on the terms of this Interim Order, the Debtors are not authorized to use the Cash Collateral. The Prepetition ABL Secured Parties, First Lien Secured Parties, the 1.5 Lien Secured Parties and the Second Lien Secured Parties have either consented or are deemed to have consented (pursuant to the Prepetition Intercreditor Agreements) to such use of the Cash Collateral. As used herein, "Termination Date" means the earlier to occur of (a) the DIP Facility Maturity Date (as defined in the applicable DIP Credit Agreement) of either the DIP Term Loan Facility or the DIP ABL Facility and (b) the occurrence of an Event of Default under either DIP Credit Agreement which has not been waived within five (5) business days in accordance with the terms of the applicable DIP Credit Agreement.

16.     *Adequate Protection for the First Lien Secured Parties.* The First Lien Secured Parties are entitled, pursuant to sections 361, 363(c)(2), and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in value of their interests in the Prepetition Collateral, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of the Cash Collateral and any other Prepetition Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "First Lien Adequate Protection Obligations"). As adequate protection, the First Lien Secured Parties are hereby granted the following:

(a)     First Lien Adequate Protection Liens. As security for the payment of the First Lien Adequate Protection Obligations, the First Lien Indenture Trustee (for itself and for the benefit of the First Lien Noteholders) is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements or other

42

agreements) a valid, perfected replacement security interest in and lien on all of the DIP Collateral including, subject to entry of the Final Order, Avoidance Action Proceeds (the "First Lien Adequate Protection Liens"), subject and subordinate only to (i) the Carve-Out, (ii) the DIP Liens (other than any DIP ABL Liens on Notes Priority Collateral), and (iii) the Non-Primed Liens, and subject further to the terms of the ABL Intercreditor Agreement and the First Lien Intercreditor Agreement.

(b)     First Lien Section 507(b) Claims.    Subject to the terms of the First Lien Intercreditor Agreement, the First Lien Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "First Lien 507(b) Claims"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code other than section 507(a)(1), including without limitation, sections 326, 328, 330, 331, and 726 of the  Bankruptcy Code, subject and subordinate only to (i) the Carve-Out, and (ii) the Superpriority Claims granted in respect of the DIP Obligations and DIP Intercompany Loan Obligations. Except to the extent expressly set forth in this Interim Order, the First Lien Secured Parties shall not receive or retain any payments, property or other amounts in respect of the First Lien 507(b) Claims unless and until all DIP Obligations and DIP Intercompany Loan Obligations shall have indefeasibly been paid in full in cash and the Carve-Out amount is funded.    Subject to entry of the Final Order, notwithstanding their status as First Lien 507(b) Claims, the First Lien Adequate Protection Obligations may be satisfied in a plan of reorganization confirmed in the Cases in the manner set forth in such plan if holders of more than 66% (by amount) of the First Lien Adequate Protection Obligations consent to such treatment.

US-DOCS\106845558.12

(c)    <u>Interest, Fees and Expenses</u>.  The Debtors are authorized and directed to pay, as adequate protection, to the First Lien Indenture Trustee all accrued and unpaid interest (including interest accrued prior to the Petition Date) on the loans constituting First Lien Obligations at the applicable non-default rate set forth in the First Lien Documents, and to pay all other accrued and unpaid fees and reasonable and documented disbursements owing to the First Lien Indenture Trustee under the First Lien Documents, as and when such interest, fees and disbursements become due and payable (but for the commencement of the Cases) in accordance with the terms of the First Lien Documents; *provided*, that such payments shall be without prejudice to whether any such payments should be recharacterized or reallocated pursuant to section 506(b) of the Bankruptcy Code as payments of principal, interest or otherwise..  As additional adequate protection, the Debtors shall also pay (i) to the First Lien Indenture Trustee, all reasonable and documented prepetition and postpetition fees and expenses of (a) the First Lien Indenture Trustee, and (b) counsel payable to the First Lien Indenture Trustee under the First Lien Documents and (ii) to the extent not included in the foregoing clause (i), (x) all reasonable and documented prepetition and postpetition fees and expenses of (A) Akin Gump Strauss Hauer & Feld LLP as counsel to the Ad Hoc First Lien Noteholder Group, (B) Ashby & Geddes, P.A., as Delaware counsel to the Ad Hoc First Lien Noteholder Group and (C) all monthly fees (but not any back-end, transaction, success, or similar fees) and reasonable and documented expenses of Evercore Group L.L.C. and investment banker to the Ad Hoc First Lien Noteholder Group and (y) all reasonable and documented fees and expenses of (A) Milbank LLP as counsel to the Ad Hoc Crossover Group, (B) Morris, Nichols, Arsht & Tunnell LLP, as Delaware counsel to the Ad Hoc Crossover Group and (C) all monthly fees (but not any back-end, transaction, success or

44

similar fees) and reasonable and documented expenses of Houlihan Lokey Capital, Inc. as investment banker to the Ad Hoc Crossover Group, unless and until the RSA Termination Date occurs and the Ad Hoc Crossover Group (or any subset thereof that remains in the Ad Hoc Crossover Group following such advocacy for more than one (1) business day or rejoins the Ad Hoc Crossover Group at any time) advocates in the Cases in a manner adverse to the interests of the First Lien Noteholders (taken as a whole), and in such circumstance, the termination of such reimbursement obligation shall be retroactive to the first date on which such advocacy adverse to the interests of the First Lien Noteholders (taken as a whole) occurs.  None of the fees and expenses payable pursuant to this paragraph 16(b) shall be subject to separate approval by this Court (but the U.S. Trustee, the Debtors and the Committee may object to the reasonableness of such fees and expenses and this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto.  The Debtors shall pay the professional fees and expenses provided for in this paragraph 16(b) promptly after receipt of monthly invoices therefor, the First Lien Indenture Trustee, the Ad Hoc First Lien Noteholder Group and the Ad Hoc Crossover Group shall promptly provide copies of such invoices (redacted to protect privileges) to the counsel to the Committee and to the U.S. Trustee.  The Debtors, the U.S. Trustee and the Committee may object to the reasonableness of the fees, costs and expenses included in any such professional fee invoice; provided that, any such objection shall be barred and deemed waived unless filed with the Bankruptcy Court and served on the applicable professional by 12:00 p.m., prevailing Eastern Time, on the date that is no later than ten (10) days after the objecting party's receipt of the applicable professional fee invoice. If such objection is timely received,

US-DOCS\106845558.12

the Debtors shall promptly pay the portion of such invoice not subject to such objection, and the Bankruptcy Court shall determine any such objection unless otherwise resolved by the applicable parties.

(d)     No Marshaling/Applications of Proceeds.   Subject to and effective upon entry of the Final Order, the First Lien Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar legal or equitable doctrine with respect to any of the Prepetition Collateral except to the extent provided in the Prepetition Intercreditor Agreements or as set forth in the next sentence.   Notwithstanding anything in this Interim Order to the contrary, the First Lien Indenture Trustee and the First Lien Noteholders shall not exercise remedies with respect to, or otherwise realize upon, any liens, mortgages or security interests placed on any DIP Term Loan Collateral until such time as all Prepetition Collateral and DIP ABL Collateral has been realized upon.

(e)     Right to Credit Bid.   Subject to Section 363(k) of the Bankruptcy Code, and so long as any credit bid provides for the payment in full of the DIP Obligations in cash upon the closing of any such credit bid and the termination of all commitments thereunder, the First Lien Lenders, in accordance with the applicable Prepetition Debt Documents and subject to any applicable Prepetition Intercreditor Agreement, shall have the right to "credit bid" up to the full amount of their respective claims and outstanding obligations, including the First Lien 507(b) Claims, if any, as determined and quantified by the Court, in connection with any sale of all or any portion of the Prepetition Collateral or DIP ABL Collateral (but not on any DIP Term Loan Collateral), including (i) any sale occurring pursuant to section 363 of the Bankruptcy Code, (ii) as part of a plan of reorganization or liquidation pursuant to section 1129 of the Bankruptcy Code, or (iii) a sale

or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code or otherwise.

(f)    <u>Information</u>.    The Debtors shall provide the legal and financial advisors to the Ad Hoc First Lien Noteholder Group and Ad Hoc Crossover Group with all financial reporting provided to the DIP Agents and to the DIP Lenders.

17.    *Adequate Protection for the 1.5 Lien Secured Parties.*    The 1.5 Lien Secured Parties are entitled, pursuant to sections 361, 363(c)(2), 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in value of their interests in the Prepetition Collateral, ~~any such diminution~~ resulting from the sale, lease or use by the Debtors (or other decline in value) of the Cash Collateral and any other Prepetition Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "<u>1.5 Lien Adequate Protection Obligations</u>").    As adequate protection, the 1.5 Lien Secured Parties are hereby granted the following:

(a)    <u>1.5 Lien Adequate Protection Liens</u>. As security for the payment of the 1.5 Lien Adequate Protection Obligations, the 1.5 Lien Indenture Trustee (for itself and for the benefit of the 1.5 Lien Noteholders) is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest in and lien on all of the DIP Collateral including, subject to entry of the Final Order, Avoidance Action Proceeds (the "<u>1.5 Lien Adequate Protection Liens</u>"), subject and subordinate only to (i) the Carve-Out, (ii) the DIP Liens, (iii) the First Lien Adequate Protection Liens, (iv) the liens securing the First Lien

Obligations and (v) the Non-Primed Liens, and subject further to the 1.5 Lien Intercreditor Agreement.  Notwithstanding anything in this Interim Order to the contrary, the 1.5 Lien Indenture Trustee and the 1.5 Lien Noteholders shall not exercise remedies with respect to, or otherwise realize upon, any liens, mortgages or security interests placed on any DIP Term Loan Collateral until such time as all Prepetition Collateral and DIP ABL Collateral has been realized upon, and any such exercise or realization shall be in accordance with the Prepetition Intercreditor Agreements.

        (b)     <u>1.5 Lien 507(b) Claims</u>. The 1.5 Lien Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "<u>1.5 Lien 507(b) Claims</u>"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code other than section 507(a)(1), including without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, subject and subordinate only to (i) the Carve-Out, (ii) the Superpriority Claims granted in respect of the DIP Obligations and DIP Intercompany Loan Obligations, (iii) the Prepetition ABL 507(b) Claims, (iv) the First Lien 507(b) Claims and (v) the Prepetition First Lien Obligations.  The 1.5 Lien Secured Parties shall not receive or retain any payments, property or other amounts in respect of the 1.5 Lien 507(b) Claims unless and until all DIP Obligations, DIP Intercompany Loan Obligations, Prepetition ABL Adequate Protection Obligations, the First Lien Adequate Protection Obligations, the Prepetition ABL Obligations and the First Lien Obligations shall have indefeasibly been paid in full in cash and the Carve-Out amount is funded.  Subject to entry of the Final Order, in addition to, and notwithstanding anything to the contrary contained in this Interim Order, any 1.5 Lien Adequate Protection Obligations may be satisfied in a plan of reorganization

US-DOCS\106845558.12

confirmed in the Cases in the manner set forth in such plan if holders of more than 66% (by amount) of the 1.5 Lien Adequate Protection Obligations consent to such treatment.

(c)   <u>Fees and Expenses</u>.   Until the RSA Termination Date (as defined below), the Debtors are authorized and directed to pay, as adequate protection, all reasonable and documented prepetition and postpetition fees and expenses of (A) Jones Day as counsel to the Ad Hoc 1.5 Lien Noteholder Group, (B) Young Conaway Stargatt & Taylor LLP, as Delaware counsel to the Ad Hoc 1.5 Lien Noteholder Group and (C) all monthly fees (but not any back-end, transaction, success or similar fees) and reasonable and documented expenses of Perella Weinberg Partners and investment banker to the Ad Hoc 1.5 Lien Noteholder Group.  None of the fees and expenses payable pursuant to this paragraph 16(b) shall be subject to separate approval by this Court (but the U.S. Trustee, the Debtors and the Committee may object to the reasonableness of such fees and expenses and this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto.  The Debtors shall pay the professional fees and expenses provided for in this paragraph 16(b) promptly after receipt of monthly invoices therefor, and the Ad Hoc 1.5 Lien Noteholder Group's advisors shall promptly provide copies of such invoices (redacted to protect privileges) to the counsel to the Committee and to the U.S. Trustee.  The Debtors, the U.S. Trustee and the Committee may object to the reasonableness of the fees, costs and expenses included in any such professional fee invoice; provided that, any such objection shall be barred and deemed waived unless filed with the Bankruptcy Court and served on the applicable professional by 12:00 p.m., prevailing Eastern Time, on the date that is no later than ten (10) days after the objecting party's receipt of the applicable professional fee

invoice. If such objection is timely received, the Debtors shall promptly pay the portion of such invoice not subject to such objection, and the Bankruptcy Court shall determine any such objection unless otherwise resolved by the applicable parties.

(d)    _Information_.    The Debtors shall provide the legal and financial advisors to the Ad Hoc 1.5 Lien Noteholder Group with all financial reporting provided to the DIP Agents and to the DIP Lenders.

18.    _Adequate Protection for the Second Lien Secured Parties._    The Second Lien Secured Parties are entitled, pursuant to sections 361, 363(c)(2), and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in value of their interests in the Prepetition Collateral, ~~any such diminution~~ to resulting from the sale, lease or use by the Debtors (or other decline in value) of the Cash Collateral and any other Prepetition Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "Second Lien Adequate Protection Obligations", and together with the Prepetition ABL Adequate Protection Obligations, First Lien Adequate Protection Obligations, and 1.5 Lien Adequate Protection Obligations, the "Adequate Protection Obligations").    As adequate protection, the Second Lien Secured Parties are hereby granted the following:

(a)    Second Lien Adequate Protection Liens. As security for the payment of the Second Lien Adequate Protection Obligations, the Second Lien Indenture Trustee (for itself and for the benefit of the Second Lien Noteholders) is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest in and lien on all of the DIP

Collateral including, subject to entry of the Final Order, Avoidance Action Proceeds (the "Second Lien Adequate Protection Liens" and, together with the First Lien Adequate Protection Liens and the 1.5 Lien Adequate Protection Liens, the "Adequate Protection Liens")[5], subject and subordinate only to (i) the Carve-Out, (ii) the DIP Liens, (iii) the First Lien Adequate Protection Liens, (iv) 1.5 Lien Adequate Protection Liens, (v) the liens securing the First Lien Obligations and the 1.5 Lien Obligations and (vi) the Non-Primed Liens, and subject further to the Second Lien Intercreditor Agreement. Notwithstanding anything in this Interim Order to the contrary, the Second Lien Indenture Trustee and the Second Lien Noteholders shall not exercise remedies with respect to, or otherwise realize upon, any liens, mortgages or security interests placed on any DIP Term Loan Collateral until such time as all Prepetition Collateral and DIP ABL Collateral has been realized upon, and any such exercise or realization shall be in accordance with the Prepetition Intercreditor Agreements.

(b)    Second Lien 507(b) Claims. The Second Lien Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "Second Lien 507(b) Claims", together with the Prepetition ABL 507(b) Claims, the First Lien 507(b) Claims and the 1.5 Lien 507(b) Claims, the "507(b) Claims"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code other than section 507(a)(1), including without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, subject and subordinate only to (i) the Carve-Out, (ii) the Superpriority

---

[5] The term "Adequate Protection Liens" is defined by reference only to liens and security interests granted pursuant to this Interim Order on assets and property of the Debtors, and therefore, no Adequate Protection Liens are granted pursuant to this Interim Order on any assets or property of any Non-Debtor Borrower or any non-Debtor affiliate of any Debtor.

US-DOCS\106845558.12

Claims granted in respect of the DIP Obligations and DIP Intercompany Loan Obligations, (iii) the Prepetition ABL 507(b) Claims, (iv) the First Lien 507(b) Claims, (v) the First Lien Obligations and (vi) the 1.5 Lien 507(b) Claims. The Second Lien Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Second Lien 507(b) Claims unless and until all DIP Obligations, DIP Intercompany Loan Obligations, the Prepetition ABL Adequate Protection Obligations, the First Lien Adequate Protection Obligations, the 1.5 Lien Adequate Protection Obligations, the Prepetition ABL Obligations, the First Lien Obligations and 1.5 Lien Obligations shall have indefeasibly been paid in full in cash and the Carve-Out amount is funded. Subject to entry of the Final Order, in addition to, and notwithstanding anything to the contrary contained in this Interim Order, any Second Lien Adequate Protection Obligations may be satisfied in a plan of reorganization confirmed in the Cases in such plan if holders of more than 66% (by amount) of the Second Lien Adequate Protection Obligations consent to such treatment.

19.    *Perfection of DIP Liens and Adequate Protection Liens.*

(a)    The DIP Agents and each of the Prepetition Agents, as applicable, are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the DIP Liens, or the applicable Adequate Protection Liens granted to them hereunder, subject to the terms of the Prepetition Intercreditor Agreements. Whether or not the DIP Agents or any of the Prepetition Agents, in their respective sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the DIP Liens and the

applicable Adequate Protection Liens, such DIP Liens and Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or, other than as set forth in the Prepetition Intercreditor Agreements with respect to the Adequate Protection Liens, subordination as of the date of entry of this Interim Order.

(b)     A certified copy of this Interim Order may, in the discretion of the applicable DIP Agent or Prepetition Agent, as the case may be, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording.

(c)     The Debtors shall execute and deliver to the DIP Agents or the applicable Prepetition Agent, as the case may be, all such agreements, financing statements, instruments and other documents as the applicable DIP Agent or Prepetition Agent, as the case may be, may reasonably request to evidence, confirm, validate or perfect the DIP Liens and the applicable Adequate Protection Liens.  The Debtors shall cause each of the Non-Debtor Borrowers to use commercially reasonable efforts to take such actions necessary to grant and perfect or otherwise reaffirm the perfection of the liens contemplated in the DIP Documents to be granted or so reaffirmed by such Non-Debtor Borrowers.

(d)     Subject to entry of the Final Order, any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other DIP Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code, and any

such provision shall have no force and effect with respect to the granting of the DIP Liens or the Adequate Protection Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in favor of the DIP Agent, DIP Lenders or Prepetition Secured Parties in accordance with the terms of the DIP Documents, DIP Intercompany Loan or this Interim Order.

20.    *Preservation of Rights Granted Under the Order*.

(a)    Unless all DIP Obligations and DIP Intercompany Loan Obligations shall have been indefeasibly paid in full in cash, it shall constitute an Event of Default under the DIP Credit Agreements and a termination of the right to use the Cash Collateral if any of the Debtors seeks, or if there is entered, any modification of this Interim Order without the prior written consent of the DIP Agents, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agents or an order is entered converting or dismissing any of the Cases.

(b)    Each of the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties have acted in good faith in connection with this Interim Order, and their reliance on this Interim Order is in good faith.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties are entitled to the fullest extent to the protections provided in section 364(e) of the Bankruptcy Code.

(c)    Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Liens, the 507(b)

Claims and all other rights and remedies of the DIP Agents, the DIP Lenders, DIP Intercompany Lender and the Prepetition Secured Parties granted by this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of the Cases, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations, DIP Intercompany Loan Obligations, or subject to entry of the Final Order, Adequate Protection Obligations. The terms and provisions of this Interim Order and the DIP Documents shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Adequate Protection Liens, the DIP Obligations, the DIP Intercompany Loan Obligations, the Adequate Protection Obligations, the Superpriority Claims, the 507(b) Claims, and the other administrative claims granted pursuant to this Interim Order, and all other rights and remedies of the DIP Agents, the DIP Lenders, the DIP Intercompany Lender and the Prepetition Secured Parties granted by this Interim Order and the DIP Documents shall continue in full force and effect until all DIP Obligations and DIP Intercompany Loan Obligations are indefeasibly paid in full in cash or otherwise deemed satisfied and all 507(b) Claims are indefeasibly paid in full in cash or otherwise satisfied in accordance with paragraph 13(a), 16(b), 17(b) or 18(b), as applicable.

21.    *Effect of Stipulations on Third Parties.*  The stipulations, admissions and releases of the Prepetition Secured Parties contained in this Interim Order, including without limitation, in paragraphs 4 and 14 of this Interim Order, shall be binding upon the Debtors under all circumstances.  The stipulations and admissions contained in this Interim Order, including

without limitation, in paragraphs 4 and 14 of this Interim Order, shall be binding upon all parties in interest (including any Committee) under all circumstances and for all purposes unless (a) any party-in-interest (including any Committee) that successfully seeks and obtains standing to do so has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including without limitation, in this paragraph 20(c)) by no later than (i) in the case of a party in interest with requisite standing other than a Committee, seventy-five (75) days after entry of this Interim Order, or (ii) in the case of a Committee, sixty (60) days after the filing of notice of appointment of the Committee); provided, however, that if, prior to the end of the Challenge Period, the cases convert to chapter 7, or if a chapter 11 trustee is appointed, the trustee shall have the later of the remaining Challenge Period or 10 days; provided, further that any such deadline is subject to extension as may be specified by this Court for cause shown, or if the applicable Prepetition Agent agrees to such an extension with respect to any Claims and Defenses in respect of the Prepetition ABL Obligations, the First Lien Obligations, the 1.5 Lien Obligations or the Second Lien Obligations, as applicable, and provided, further that so long as the Restructuring Support Agreement dated as of March 31, 2019 remains in effect with respect to the Consenting First Lien Noteholders (as defined therein) and the Consenting Crossholder Noteholders (as defined therein), such deadline, with respect to the applicable Prepetition Agent with respect to any Claims and Defenses in respect of the First Lien Obligations, the 1.5 Lien Obligations or the Second Lien Obligations shall be tolled until the earlier of (X) the effective date of a plan of reorganization for the Debtors and (Y) the date that is sixty (60) days after the date (the date described in the following clause, "RSA Termination Date") the Restructuring Support Agreement ceases being so in effect (the foregoing deadline, the "Challenge Deadline"), (i) challenging the validity, enforceability, or priority of (A) the Prepetition ABL Obligations or

the liens on Prepetition Collateral securing the Prepetition ABL Obligations, (B) the First Lien Obligations or the liens on the Prepetition Collateral securing the First Lien Obligations, (C) the 1.5 Lien Obligations or the liens on Prepetition Collateral securing the 1.5 Lien Obligations or (D) the Second Lien Obligations or the liens on Prepetition Collateral securing the Second Lien Obligations or (ii) otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Claims and Defenses") against any of the Prepetition Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, each in their capacity as such, in connection with any matter related to the Prepetition ABL Obligations, the First Lien Obligations, the 1.5 Lien Obligations, the Second Lien Obligations or the Prepetition Collateral and (b) an order is entered and becomes final and non-appealable in favor of the plaintiff sustaining any such challenge or claim in any such timely filed adversary proceeding or contested matter; *provided*, that any pleadings filed in any adversary proceeding or contested matter shall set forth with specificity the basis for the Claims and Defenses asserted therein and any Claims and Defenses not so specified prior to the expiration of the Challenge Deadline shall be deemed forever waived, released and barred.  If no such adversary proceeding or contested matter is timely filed in respect of the Prepetition ABL Obligations the First Lien Obligations, the 1.5 Lien Obligations or the Second Lien Obligations, as the case may be, (x) the  Prepetition ABL Obligations, the First Lien Obligations, the 1.5 Lien Obligations and the Second Lien Obligations, as the case may be, shall constitute allowed claims, not subject to counterclaim, setoff, subordination (except as set forth in the applicable Prepetition Intercreditor Agreement), recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 case, (y) the liens on the Prepetition Collateral securing the   Prepetition ABL

US-DOCS\106845558.12

Obligations, the First Lien Obligations, the 1.5 Lien Obligations and the Second Lien Obligations, as the case may be, shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraphs 4(b), 4(f), 4(i), and 4(k) as applicable, not subject to defense, counterclaim, recharacterization, subordination (except as set forth in the applicable Prepetition Intercreditor Agreement) or avoidance and (z) the Prepetition ABL Obligations, the Prepetition ABL Lenders, the Prepetition ABL Agent, the First Lien Obligations, the First Lien Indenture Trustee, the First Lien Noteholders, the 1.5 Lien Obligations, the 1.5 Lien Indenture Trustee, the 1.5 Lien Noteholders, the Second Lien Obligations, the Second Lien Indenture Trustee and the Second Lien Noteholders, each in their capacity as such, as the case may be, and the liens on the Prepetition Collateral granted to secure the Prepetition ABL Obligations, the First Lien Obligations, the 1.5 Lien Obligations and the Second Lien Obligations, as the case may be, shall not be subject to any other or further challenge by any party-in-interest (including the Committee), and each such party-in-interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors).  If any such adversary proceeding or contested matter is timely filed and remains pending and the cases are converted to chapter 7, the chapter 7 trustee may continue to prosecute such adversary proceeding or contested matter on behalf of the Debtors' estates.  Furthermore, if any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in paragraphs 4 and 14 of this Interim Order shall nonetheless remain binding and preclusive (as provided in the third sentence of this paragraph) on all parties-in-interest (including the Committee), except as to any such findings and admissions that were expressly and successfully

challenged in such adversary proceeding or contested matter and until such time as an order sustaining such challenge becomes final and non-appealable.  In the event that there is a timely successful challenge by a final non-appealable order, pursuant and subject to the limitations contained in this paragraph 20(c), to the repayment of the Prepetition ABL Obligations pursuant to this Interim Order based upon a successful challenge to the validity, enforceability, extent, perfection or priority of the Prepetition ABL Obligations or the liens securing the same, the Court shall have the power to unwind or otherwise modify (which might include the disgorgement or reallocation of interest, fees, principal or other incremental consideration paid in respect of the Prepetition ABL Obligations or the avoidance of liens and/or guarantees with respect to the Debtors), as the Court shall determine.  Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee or any non-statutory committees appointed or formed in these Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Claims and Defenses with respect to the Prepetition ABL Obligations, the First Lien Obligations, the 1.5 Lien Obligations and the Second Lien Obligations or the liens on the Prepetition Collateral securing the same.  For the avoidance of doubt, upon the occurrence of the RSA Termination Date, nothing in this Interim Order will limit, restrict, or modify in any way the rights of the Debtors or any other party in interest, subject to the terms of the Prepetition Intercreditor Agreements, to commence or participate in any adversary proceeding or contested matter concerning (x) the extent to which any First Lien Obligations, 1.5 Lien Obligations, and/or Second Lien Obligations constitute secured claims pursuant to section 506(a) of the Bankruptcy Code or (y) the value of the Prepetition Collateral securing such obligations.

22.     *Limitation on Use of DIP Loans, DIP Collateral and Prepetition Collateral.*  The Debtors shall use the DIP Loans and the Prepetition Collateral (including the Cash Collateral) solely as provided in this Interim Order and the DIP Documents.  Notwithstanding anything herein or in any other order of this Court to the contrary, no DIP Loans, no DIP Collateral, no Prepetition Collateral (including the Cash Collateral) nor the Carve-Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents, the Prepetition ABL Documents or the liens or claims granted under this Interim Order, the DIP Documents, the Prepetition ABL Documents, or, other than with respect to the rights reserved in the last sentence of paragraph 21 of this Interim Order, (b) assert any Claims and Defenses or any other causes of action against the DIP Agents, the DIP Lenders, the Prepetition Secured Parties, or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Agents' assertion, enforcement or realization on the DIP Collateral in accordance with the DIP Documents or this Interim Order, (d) seek to modify any of the rights granted to the DIP Agents, the DIP Lenders or the Prepetition Secured Parties hereunder or under the DIP Documents or the Prepetition Debt Documents, in the case of each of the foregoing clauses (a) through (d), without such party's prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court and (ii) permitted under the DIP Documents; provided that, notwithstanding anything to the contrary herein, no more than an aggregate of $50,000 of the Prepetition Collateral (including the Cash Collateral), the DIP Loans, the DIP Collateral or the Carve-Out may be used by the Committee to investigate the validity, enforceability or priority of the   Prepetition ABL Obligations, the First Lien Obligations, the 1.5 Lien Obligations, the

Second Lien Obligations or the liens on the Prepetition Collateral securing the Prepetition ABL

Obligations, the First Lien Obligations, the 1.5 Lien Obligations or the Second Lien Obligations,

or investigate any Claims and Defenses against the Prepetition Secured Parties; _provided_ further

that, *(subject to entry of a Final Order, 20)* prior to the RSA Termination Date, the Creditors' Committee shall incur no fees and

expenses in connection with an investigation of the stipulations and admissions contained herein,

including without limitation, in paragraphs 4 and 14 of this Interim Order.

23.    *Insurance.*  To the extent any Prepetition Secured Party is listed as loss payee or

lender loss payee under the Debtors' insurance policies, each of the DIP Agents is also deemed

to be the loss payee or lender loss payee under the Debtors' insurance policies and shall act in

that capacity and subject to the terms of the DIP Documents, distribute any proceeds recovered

or received in respect of any such insurance policies, _first_, to the payment in full of the DIP

Obligations, and _second_, to the payment of the First Lien Obligations, the 1.5 Lien Obligations

and the Second Lien Obligations, subject to and in accordance with the Prepetition Intercreditor

Agreements.

24.    *Loss or Damage of Collateral.* Nothing in this Interim Order, the DIP Documents,

or any other documents related to these transactions shall in any way be construed or interpreted

to impose or allow the imposition upon any of the DIP Agents, DIP Lenders or any of the

Prepetition Secured Parties of any liability for any claims arising from the prepetition or

postpetition activities of the Debtors in the operation of their business, or in connection with their

restructuring efforts. So long as the DIP Agents and the DIP Lenders comply with their

obligations under the DIP Documents and their obligations, if any, under applicable law

(including the Bankruptcy Code), (a) the DIP Agents and the DIP Lenders shall not, in any way

or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral, (ii) any loss or

damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person and (b) all risk of loss, damage or destruction of the DIP Collateral shall be borne by the DIP ABL Borrower, the Non-Debtor Borrowers, the DIP ABL Facility Guarantors, the DIP Term Loan Borrower and the DIP Term Loan Facility Guarantors other than such loss, damage or destruction caused by the DIP Agents or the DIP Lenders, as determined by a final non-appealable court order.

25.     *Order Governs.*  In the event of any inconsistency between the provisions of this Interim Order and the DIP Documents, the provisions of this Interim Order shall govern. Furthermore, notwithstanding anything to the contrary contained herein, the Debtors acknowledge and agree that Holdings does not and shall not have any material assets other than its ownership of the equity of Intermediate Holdings, and Holdings shall not be obligated under the DIP Documents or with respect to any Adequate Protection Obligations.

26.     *Binding Effect; Successors and Assigns.*  The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties-in-interest in the Cases, including without limitation, the DIP Agents, the DIP Lenders, the DIP Intercompany Lender, the Prepetition Secured Parties, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for any of the Debtors, any examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agents, the DIP Lenders, the DIP Intercompany Lender, the Prepetition Secured Parties and the Debtors and their respective successors and assigns; provided that, except to the extent expressly set forth in

this Interim Order, the DIP Documents or the Prepetition Intercreditor Agreements, the DIP Agents, the DIP Lenders, the DIP Intercompany Lender and the Prepetition Secured Parties shall have no obligation to permit the use of the DIP Loans or the Prepetition Collateral (including the Cash Collateral) or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

27.    *Limitation of Liability.*

(a)    In determining to make any loan or other extension of credit under the DIP Documents, permitting the use of the Prepetition Collateral (including the Cash Collateral) or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, the DIP Agents, the DIP Lenders and the Prepetition Secured Parties shall not (i) be deemed to be in "control" of the operations of the Debtors, (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates, or (iii) be deemed to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).

(b)    Nothing in this Interim Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agents, the DIP Lenders or any Prepetition Secured Party of any liability for any claims arising from the pre-petition or post-petition activities of any of the Debtors.

(c)    Nothing in this Interim Order or in the DIP Documents shall permit the Debtors to violate 28 U.S.C. § 959(b).

US-DOCS\106845558.12

28.    *Prepetition Intercreditor Arrangements.*  Nothing in this Interim Order shall amend or otherwise modify the terms or enforceability of the Prepetition Intercreditor Agreements, including without limitation, the turnover provisions contained therein, and the Prepetition Intercreditor Agreements shall each remain in full force and effect.  The rights of the Prepetition Secured Parties shall at all times remain subject to the applicable Prepetition Intercreditor Agreement.  All distributions made to the DIP ABL Lenders shall be made in accordance with the terms of the DIP ABL Documents and all distributions made to the DIP Term Loan Lenders shall be made in accordance with the terms of the DIP Term Loan Documents.

29.    *Commitment/Fee Letters.*  Unredacted copies of the Commitment/Fee Letters have been or shall be provided solely to (i) the U.S. Trustee, (ii) counsel to the Committee (if any), (iii) this Court and (iv) any other party as may be agreed by the Debtors and the DIP Agents (collectively, the "Limited Notice Parties").  The Limited Notice Parties shall at all times keep the Commitment/Fee Letters strictly confidential and shall not disclose the contents of the Commitment/Fee Letters to any party whatsoever, including but not limited to their respective clients.  Within two days after the date of entry of this Interim Order, the Debtors will file a motion, in form and substance satisfactory to the DIP Agents, requesting authority to file the Commitment/Fee Letters under seal or in a redacted form.  Any pleadings filed in these Cases that reference or disclose information that is redacted from the Commitment/Fee Letters shall be filed under seal or redacted accordingly.

30.    *Master Proof of Claim.*  The Prepetition ABL Agent, each of the First Lien Indenture Trustee, the 1.5 Lien Indenture Trustee, the Second Lien Indenture Trustee (collectively, the "Prepetition Indenture Trustees") and/or any other Prepetition Secured Parties

shall not be required to file proofs of claim in the Cases or any successor case in order to assert claims on behalf of themselves or the Prepetition Secured Parties for payment arising under the Prepetition Debt Documents, including, without limitation, any principal, unpaid interest, fees, expenses and other amounts under the Prepetition Debt Documents. The statements of claim in respect of such indebtedness set forth in this Interim Order, together with any evidence accompanying the Motion, are deemed sufficient to and do constitute proofs of claim in respect of such debt and such secured status. However, in order to facilitate the processing of claims, to ease the burden upon the Court and to reduce an unnecessary expense to the Debtors' estates, each of the Prepetition ABL Agent, and the Prepetition Indenture Trustees is authorized to file in the Debtors' lead chapter 11 case In re Hexion Holdings LLC, Case No. 19-10687 (KG), a master proof of claim on behalf of its respective Prepetition Secured Parties on account of any and all of their respective claims arising under the applicable Prepetition Debt Documents and hereunder (each, a "Master Proof of Claim") against each of the Debtors. Upon the filing of a Master Proof of Claim by any of the Prepetition Agent and Prepetition Indenture Trustees, such entity shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors of any type or nature whatsoever with respect to the applicable Prepetition Debt Documents, and the claim of each applicable Prepetition Secured Party (and each of its respective successors and assigns), named in a Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of these Cases. The Master Proofs of Claim shall not be required to identify whether any Prepetition Secured Party acquired its claim from another party and the identity of any such party or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of

US-DOCS\106845558.12

such claims. The provisions of this paragraph 29 and each Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed in these Cases or to assert that the amount of its claim is different from that set forth on the applicable Master Proof of Claim. The Master Proofs of Claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the applicable Prepetition Secured Parties.

31.     *Commodity Hedges.*  Without limiting the rights of the Commodity Hedge counterparties, subject to the terms and conditions set forth in this Interim Order, the applicable Debtors are hereby permitted to use Cash Collateral and the proceeds of the DIP Financing to continue performing their obligations to the applicable counterparties under the Commodity Hedges.

32.     *Effectiveness.*  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of effectiveness of this Interim Order.

33.     *Final Hearing.*  The Final Hearing is scheduled for May 1, 2019 at 2:00 p.m., prevailing Eastern Time, before this Court.

34.     *Final Hearing Notice.*  The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) on the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to the Committee after the same has been appointed, or Committee counsel,

66

if the same shall have been appointed.  Any party-in-interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (a) Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Attention: George A. Davis, Esq. and Andrew M. Parlen, Esq. (Emails: george.davis@lw.com and Andrew.parlen@lw.com)), and Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King St., Wilmington, Delaware 19801 (Attention: Mark D. Collins, Esq. and Michael J. Merchant, Esq. (Emails: collins@rlf.com and merchant@rlf.com), attorneys for the Debtors; (b) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attention: Jeffrey D. Saferstein, Esq. and Jacob A. Adlerstein, Esq. (emails: jsaferstein@paulweiss.com and jadlerstein@paulweiss.com)), corporate attorneys for the Debtors; (c) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Attention: Sandeep Qusba, Esq., Kathrine A. McLendon, Esq., and Nicholas E. Baker, Esq. (emails: squsba@stblaw.com, kmclendon@stblaw.com, and nbaker@stblaw.com)), and Landis, Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801 (Attention: Adam G. Landis, Esq. and Matthew B. McGuire, Esq. (emails: landis@lrclaw.com and mcguire@lrclaw.com)), attorneys for the DIP Agents; (d) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Attention: William B. Sheehan, Esq. (email: wsheehan@stblaw.com)), attorneys for the Prepetition ABL Agent; (e) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attention: Ira S. Dizengoff and Philip C. Dublin (emails: idizengoff@akingump.com and pdublin@akingump.com)), and Ashby & Geddes, P.A., 500 Delaware Avenue, 8th Floor, Wilmington, DE 19801 (Attention: William P. Bowden (email: wbowden@ashbygeddes.com)), attorneys for the Ad Hoc Group of First Lien Noteholders; (f) Jones Day, 250 Vesey Street, New

US-DOCS\106845558.12

York, New York 10281 (Attention: Sidney P. Levinson and Jeremy D. Evans (emails: slevinson@jonesday.com and jdevans@jonesday.com)), and Young Conaway Stargatt & Taylor, LLP (Attention: Robert S. Brady (email: rbrady@ycst.com)), attorneys for the Ad Hoc Group of 1.5 Lien Noteholders; (g) Milbank LLP, 55 Hudson Yards, New York, New York 10001 (Attention: Samuel A. Khalil, Esq. and Matthew Brod, Esq. (emails: skhalil@milbank.com and mbrod@milbank.com)), and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347 (Attention: Robert J. Dehney, Esq. (rdehney@mnat.com)), attorneys for the Ad Hoc Crossover Group; (h) Arnold & Porter Kaye Scholer LLP, 250 West 55th Street, New York, NY 10019 (Attention: Jonathan I. Levine (email: jonathan.levine@arnoldporter.com)), attorneys for the 1.5 Lien Indenture Trustee; (i) contract counterparties that are subject to paragraph 19(d), (j) counsel to any Committee; and (k) the Office of the U.S. Trustee for the District of Delaware (Attention: Linda Casey (email: Linda.Casey@usdoj.gov)), and shall be filed with the Clerk of the Bankruptcy Court, in each case to allow actual receipt by the foregoing no later than April 24, 2019 at 4:00 p.m., prevailing Eastern Time.

Dated: April 2, 2019
      Wilmington, Delaware

                                    _____
                          THE HONORABLE KEVIN GROSS
                          UNITED STATES BANKRUPTCY JUDGE